1   GIBSON, DUNN & CRUTCHER LLP
    THEANE EVANGELIS, SBN 243570
2     tevangelis@gibsondunn.com
    DHANANJAY S. MANTHRIPRAGADA, SBN 254433
3     dmanthripragada@gibsondunn.com
    333 South Grand Avenue
4   Los Angeles, CA 90071-3197
    Telephone:    213.229.7000
5   Facsimile:    213.229.7520

6   MICHELE L. MARYOTT, SBN 191993
      mmaryott@gibsondunn.com
7   3161 Michelson Drive
    Irvine, CA 92612-4412
8   Telephone:    949.451.3800
    Facsimile:    949.475.4668

9

10  Attorneys for Defendant POSTMATES INC.

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14  DORA LEE, on behalf of herself and all others     CASE NO. 3:18-cv-03421-JCS
    similarly situated,
15                                                     **DEFENDANT POSTMATES INC.'S REPLY
                          Plaintiff,                   IN SUPPORT OF MOTION TO COMPEL
16                                                     ARBITRATION AND STAY PROCEEDINGS**
          v.
17                                                     *[Declaration of Ashley Campbell filed
    POSTMATES INC.,                                    concurrently herewith]*
18
                          Defendant.                   **Hearing:**
19                                                     Date:        October 5, 2018
                                                       Time:        2:00 p.m.
20                                                     Place:       Courtroom G
                                                       Judge:       Hon. Joseph C. Spero
21
                                                       Action Filed:  May 8, 2018
22                                                     Trial Date:  None Set

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION

II.   ARGUMENT

      A.    The Parties Entered into an Arbitration Agreement That Covers This Dispute ........... 2

      B.    Plaintiff Cannot Avoid Arbitration by Adding Timmerman and Albert as
            Plaintiffs ...................................................................................................................... 3

      C.    Plaintiff Is Not Exempt from the FAA Under the Transportation Worker
            Exemption .................................................................................................................... 6

            1.    Plaintiff Is Not an Interstate "Transportation Worker" ...................................... 6

            2.    Plaintiff Did Not Enter into a "Contract of Employment" with
                  Postmates ........................................................................................................... 8

            3.    The Applicability of Section 1 Should be Delegated to an Arbitrator ............... 9

            4.    A Pre-Certification Merits Decision Would Violate Defendant's Due
                  Process Rights and the One-Way Intervention Rule ........................................ 10

      D.    Even if the Motion for Leave to Amend Is Granted, the Court Must Still
            Compel Individual Arbitration of Plaintiff's Purported Claim for Public
            Injunctive Relief ......................................................................................................... 11

      E.    Plaintiff Was on Notice of and Assented to the Terms of the Fleet Agreement ........ 13

      F.    Any Non-Arbitrable Claims Must Be Stayed Pending Arbitration of Lee's
            Other Claims .............................................................................................................. 15

III.  CONCLUSION

# TABLE OF CONTENTS

Page

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
133 S. Ct. 2304 (2013) ............................................................................................................4

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
622 F. Supp. 2d 825 (N.D. Cal. 2007) ..................................................................................15

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..........................................................................................2, 4, 10, 12, 13

*AT&T Techs., Inc. v. Commc'n Workers of Am.*,
475 U.S. 643 (1986) ................................................................................................................9

*Beggs Bros. Fruit Co. v. United Farmers Ass'n of Cal.*
41 Cal. App. 2d 766 (1940)....................................................................................................15

*Bickerstaff v. Suntrust Bank*,
299 Ga. 459 (2016) ............................................................................................................5, 6

*Bushley v. Credit Suisse First Bos.*,
360 F.3d 1149 (9th Cir. 2004)..................................................................................................1

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ...........................................................................15

*Christie v. Loomis Armored US, Inc.*,
2011 WL 6152979 (D. Colo. Dec. 9, 2011)............................................................................8

*Circuit City Stores v. Adams*,
532 U.S. 105 (2001)......................................................................................................6, 7, 8, 9

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ..................................................................................14

*Cullinane v. Uber Technologies, Inc.*,
893 F.3d 53 (1st Cir. 2018).......................................................................................13, 14, 15

*Div. of Labor Law Enforc. v. Transpacific Transp.*,
69 Cal. App. 3d 268 (1977)..................................................................................................13

*Doctor's Assocs., Inc. v. Casarotto*,
517 U.S. 681 (1996)..................................................................................................................5

Gibson, Dunn &
Crutcher LLP

*Eastwood Homes, Inc. v. Hudson*,
  161 Cal. App. 2d 532 (1958) .................................................................................................5

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) .................................................................................................4, 13

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) ....................................................................................................13

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) .......................................................................................................9

*Gonzales v. Raich*,
  545 U.S. 1 (2005) .........................................................................................................7

*Green v. SuperShuttle Int'l, Inc.*,
  653 F.3d 766 (8th Cir. 2011) ........................................................................................10

*Hill v. Rent-A-Center, Inc.*,
  398 F.3d 1286 (11th Cir. 2005) .....................................................................................7

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) .......................................................................................................3

*Int'l Bhd. of Teamsters v. Kienstra Precast, LLC*,
  702 F.3d 954 (7th Cir. 2012) ........................................................................................7

*Jamaica Buses, Inc. v. Transport Workers' Union, AFL-CIO, Local 100*,
  2003 WL 1621026 (E.D.N.Y. Mar. 26, 2003) ..............................................................7

*Khasin v. Hershey Co.*,
  2014 WL 1779805 (N.D. Cal. May 5, 2014) ...............................................................11

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
  137 S. Ct. 1421 (2017) .................................................................................................10

*Levin v. Caviar, Inc.*,
  146 F. Supp. 3d 1146 (N.D. Cal. 2015) ........................................................................6

*Lindsey v. Normet*,
  405 U.S. 56 (1972) .......................................................................................................11

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*
  89 Cal. App. 4th 1042 (2001) .......................................................................................14

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) ..........................................................................................2, 11, 12

*Meyer v. Uber Techs., Inc.*,
  F.3d 66, 78-79 (2d Cir. 2017) ......................................................................................14

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016).........................................................................1, 9, 10

*New Prime Inc. v. Oliveira*,
    No. 17-430 ....................................................................................................................9

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014).......................................................................................13

*Palcko v. Airborne Express, Inc.*,
    372 F.3d 588 (3d Cir. 2004)............................................................................................8

*Reinkemeyer v. SAFECO Ins. Co. of Am.*,
    166 F.3d 982 (9th Cir. 1999)...........................................................................................6

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010).........................................................................................................10

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010)........................................................................................5

*Seven-Up/RC Bottling Co. of Southern California, Inc. v. Amalgamated Industrial
    Workers Union*,
    183 F. App'x 643 (9th Cir. 2006) .....................................................................................7

*Standard Fire Ins. Co. v. Knowles*,
    133 S. Ct. 1345 (2013) .....................................................................................................5

*Stewart v. Preston Pipeline Inc.*,
    134 Cal. App. 4th 1565 (2005).......................................................................................13

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ...........................................................................15

*In re Van Dusen*,
    654 F.3d 838 (9th Cir. 2011)......................................................................................9, 10

*Vargas v. Delivery Outsourcing, LLC*,
    2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ...................................................................7

*Veliz v. Cintas Corp.*,
    2004 WL 2452851 (N.D. Cal. Apr. 5, 2004) ...................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).........................................................................................................5

*Wickard v. Filburn*,
    317 U.S. 111 (1942).........................................................................................................7

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:18-CV-03421-JCS

*Yucesoy v. Uber Techs., Inc.,*
    15-cv-00262-EMC (N.D. Cal. Mar. 5, 2018) ....................................................................6

**Statutes**

9 U.S.C. § 3 ...............................................................................................................................15

9 U.S.C. § 4 ...............................................................................................................................10

9 U.S.C. § 16(a)(1)(B) ........................................................................................................13, 15

28 U.S.C. § 2072(b) ....................................................................................................................5

45 U.S.C. § 151 ...........................................................................................................................9

Cal. Civ. Code § 1550 ...............................................................................................................13

Cal. Civ. Code § 1556 ...............................................................................................................13

**Other Authorities**

*Black's Law Dictionary* 939 (10th ed. 2014) .............................................................................8

Restatement (First) of Agency § 2 (1933) ..................................................................................8

Restatement (First) of Torts § 409 (1934) ..................................................................................8

**Rules**

Circuit Rule 36-3(a) ....................................................................................................................7

Circuit Rule 36-3(c) ....................................................................................................................7

Gibson, Dunn &
Crutcher LLP

# I.    INTRODUCTION

Plaintiff Dora Lee agreed to individually arbitrate her claims against Defendant Postmates Inc.  Plaintiff accepted the Mutual Arbitration Provision, which expressly covers any dispute regarding her classification as an independent contractor, and did not validly opt out despite having an opportunity to do so.  Pursuant to the delegation clause in the Fleet Agreement, this Court's review is limited to whether the parties have "clearly and unmistakably" agreed to reserve arbitrability questions for an arbitrator.  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016).  Under the FAA, this case should be sent to arbitration "as quickly and easily as possible."  *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1153 (9th Cir. 2004) (quotation and citations omitted).

Plaintiff nevertheless ignores the terms of the parties' agreement and raises four meritless arguments in opposition to Postmates' motion to compel arbitration.

***First***, Plaintiff argues that *her* claims should not be compelled to arbitration because she seeks to add two *other* named plaintiffs who allegedly opted out of arbitration.  Putting aside that Plaintiff's motion for leave to amend should be denied, *see* Dkt. 22, Plaintiff's argument fails for the simple reason that no federal or California court has ever accepted the argument that one individual's opt out can be imputed to others.  Moreover, Plaintiff's attempt to add new plaintiffs while Postmates' motion to compel arbitration is pending is—at best—gamesmanship designed to frustrate and delay arbitration of Plaintiff's claims, and—more clearly—nothing more than an improper end run around Postmates' motion to compel.  Indeed, one of the proposed new plaintiffs (Albert) signed up as a courier *after* Postmates filed its motion, completed his first delivery just three days before Plaintiff filed her motion for leave to amend and her opposition to Postmates' motion, and opted out the same day (just 21 minutes before) she filed papers with this Court representing that he had opted out.  Campbell Decl. ¶ 13.  Like Plaintiff, the other proposed plaintiff (Timmerman) accepted and never validly opted out of the Mutual Arbitration Provision, *id.* ¶ 12; to the extent she seeks to pursue claims against Postmates, like Plaintiff, Timmerman must do so in individual arbitration.[1]

---

[1]   To date, Plaintiff's counsel has filed 25 demands for arbitrations on behalf of couriers pursuant to the Fleet Agreement's Mutual Arbitration Provision.  Campbell Decl. ¶ 19.  In other words, Plaintiff's counsel has taken advantage of the very agreement she now seeks to avoid.

***Second***, Plaintiff argues that the FAA is inapplicable because of the statute's narrow exception for "contracts of employment" of interstate "transportation workers."  This position has zero support from any decisional authority, and every court to have examined this issue has found that arbitration agreements signed by local couriers like Plaintiff are subject to the FAA.  *See* Section II(C)(1).  In addition, the Fleet Agreement is an independent contractor agreement, not a contract of employment, and the FAA exemption is therefore inapplicable.

***Third***, Plaintiff seeks to avoid arbitration under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).  But neither the operative complaint nor the proposed amended complaint seeks "public injunctive relief" under *McGill*.  And in any event, the FAA preempts *McGill*, as it "interferes with fundamental attributes of arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

***Fourth***, Plaintiff argues that she was not made reasonably aware that she agreed to arbitrate her claims.  This claim is baseless.  The Fleet Agreement is presented to couriers through the Postmates "Fleet App," where couriers must follow a "click-through" process during which they are presented with a link to the agreement.  Campbell Decl. ¶ 15.  Couriers are prompted to click either "Agree" or "Dismiss" after the statement, "I agree to the Fleet Agreement." *Id*. ¶ 16.  The first page of the Fleet Agreement urges new couriers in all-caps lettering to "specifically . . . review the Mutual Arbitration Provision."  Mot. at 9.  The Mutual Arbitration Provision clearly states that by accepting the Fleet Agreement, couriers agree to resolve all disputes with Postmates through arbitration.  Plaintiff did not validly opt out despite having the opportunity to do so. *Id*.  And, in any event, the delegation clause in the Mutual Arbitration Provision delegates issues of arbitrability to the arbitrator.

For all of these reasons, the Court should compel arbitration of Plaintiff's claims and stay proceedings.

## II.   ARGUMENT

### A.   The Parties Entered into an Arbitration Agreement That Covers This Dispute

Plaintiff does not—nor can she—dispute that she entered into, and did not validly opt out of, the Mutual Arbitration Provision.  Indeed, Plaintiff did not opt out of the Fleet Agreement she accepted on March 27, 2017, and between March 27, 2017 and May 14, 2018, she completed 112 deliveries using the Postmates platform. *See* Mot. to Compel Arbitration, Dkt. 14, at 4.  On May 15,

2018, Plaintiff accepted the updated version of the Fleet Agreement. *Id.* That same day, Plaintiff completed one delivery using the Postmates platform. Campbell Decl. ¶ 8. She has not completed any deliveries using the Postmates platform since. *Id.* On May 22, 2018 and May 23, 2018, Plaintiff emailed Postmates attempting to opt out of the Mutual Arbitration Provision. *Id.* ¶ 9. Her attempts to opt out were ineffective, however, because the arbitration provision in the updated agreement was not materially different from the prior agreement to which she was bound, and her acceptance of the updated agreement did not create a renewed chance to opt out. *Id.*[2]

Plaintiff also does not dispute that the Mutual Arbitration Provision covers all of the claims in this litigation, which are predicated on her claim that she was misclassified as an independent contractor. Opp. at 10–11. Nor does Plaintiff dispute that, if the FAA applies (which it does, see *id*. at 5–6), the arbitrator must decide any "gateway" issues of arbitrability.[3] *See id*. at 6–8; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). Moreover, Plaintiff expressly states that she "is not raising an unconscionability challenge to the agreement." *Id.* at 3 n.5. Plaintiff's only challenge to the Class Action Waiver is that it is unenforceable under the California Arbitration Act, *id*. at 18 n.21, which does not apply. Further, Plaintiff implicitly concedes that if the FAA applies, as it does, the Mutual Arbitration Provision and Class Action Waiver must be enforced. Opp. at 18 & n.21. Based on these concessions alone, this Court should compel arbitration of Plaintiff's claims.

## B.   Plaintiff Cannot Avoid Arbitration by Adding Timmerman and Albert as Plaintiffs

Plaintiff asks this Court to deny Postmates' motion to compel arbitration in light of Plaintiff's pending request to amend her complaint to add two named plaintiffs, Kellyn Timmerman and Joshua Albert, who purportedly opted out of the Mutual Arbitration Provisions in the Fleet Agreements they accepted. Opp. at 1, 5. As Postmates explains in its concurrently-filed opposition to Plaintiff's

---

[2]   Defendant's Motion to Compel Arbitration and Stay Civil Proceedings, and the accompanying Declaration of Patricia Cartes, Dkt. 14, stated that Plaintiff did not opt out of the Fleet Agreement she accepted on May 15, 2018. To clarify, and as explained in the concurrently-filed Declaration of Ashley Campbell, Campbell Decl. ¶ 19, it appears that Plaintiff Lee attempted to opt out of the Fleet Agreement she accepted on May 15, 2018, but her attempted opt-out was not effective. *See* Section II(A).

[3]   Such issues would include any dispute about the validity of Plaintiff's attempt to opt out.

1    motion for leave to file a first amended complaint, the Court should not allow the proposed

2    amendment, as it is futile, would unduly prejudice Postmates, and lacks a good-faith basis.  Dkt. 22.

3         That aside, adding Timmerman and Albert as named plaintiffs would not exempt Plaintiff's

4    claims from arbitration.[4]  Even if any individual plaintiff opted out, such opt-outs cannot be imputed

5    to Lee (let alone the putative class).  Notably, no federal or California court has *ever* accepted this

6    argument.  Rather, under the FAA, courts must "rigorously . . . enforce arbitration agreements

7    according to their terms, including terms that specify *with whom* the parties choose to arbitrate their

8    disputes."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted).  Here, the

9    Mutual Arbitration Provision makes clear that a courier may only opt out on behalf of him or herself.

10   It provides that "Contractor's decision to opt out of this Mutual Arbitration Provision will relieve

11   *Contractor only* of Contractor's obligation to arbitrate the disputes specified in this Mutual

12   Arbitration Provision."  Campbell Decl. Ex. D, §11B(ix), E §11B(x) (emphasis added).

13        Plaintiff's argument to the contrary would also "interfere[] with fundamental attributes of

14   arbitration and thus create[] a scheme inconsistent with the FAA."  *Concepcion*, 563 U.S. at 344.

15   Deeming Timmerman and Albert to have opted out the entire putative class would nullify the Class

16   Action Waiver, "destroy[ing] the prospect of speedy resolution that arbitration in general and

17   bilateral arbitration in particular was meant to secure."  *Am. Express Co. v. Italian Colors Rest.*, 133

18   S. Ct. 2304, 2312 (2013).  If the mere filing of a class action and the opt out of a single plaintiff could

19   nullify class waivers, much of the U.S. Supreme Court's FAA jurisprudence would be a dead letter.

20        Further, Plaintiff's "constructive opt-out" argument violates the fundamental tenets of class

21   action law in at least two distinct ways.  *First*, Plaintiff's argument rests on the proposition that a

22   named plaintiff may opt out of arbitration on behalf of absent putative class members at any time,

23

24   _____

25   [4]  Plaintiff contends that both proposed new plaintiffs "opted out of Postmates's [sic] arbitration agreement."  Opp. at 1, 5.  But Timmerman's attempted opt-out, like Plaintiff's, was not effective.  Timmerman chose not to opt out of the Mutual Arbitration Provision in the Fleet Agreement she accepted when signing up to be courier on May 24, 2017.  Campbell Decl. ¶ 10.
26   By later accepting the updated Fleet Agreement, Timmerman "acknowledge[d] and agree[d]" that she would not have a "renewed opportunity to opt out of arbitration" unless the Mutual Arbitration Provision was materially different from a prior one to which she was bound, which
27   was not the case.  *Id.* ¶ 12, Ex. E. § 1C.
28

Gibson, Dunn &
Crutcher LLP

4

including before she has obtained or even requested class certification.  But as the Supreme Court explained in *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013), "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." That is because "'[a] nonnamed class member is [not] a party to the class-action litigation *before the class is certified.*'"  *Id.* at 1348–49 (citation omitted).  Under *Standard Fire*, then, a plaintiff has no legal right to opt out of arbitration on behalf of absent putative class members.[5]

*Second*, "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b)."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011).  This statute safeguards the constitutional due process rights of the parties to a class action proceeding.  *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) ("The Rules Enabling Act []—and due process—prevents the use of class actions from abridging the substantive rights of any party.").  Plaintiff's argument runs afoul of these important protections, as her proposal would permit a named plaintiff to unilaterally vitiate the substantive contract rights of Postmates and other couriers with whom it has contracted.

Furthermore, Plaintiff's argument, if accepted, would violate California law by enabling a party to evade her contractual obligation to arbitrate by doing nothing more than filing a lawsuit, or (even more passively), by being a putative absent class member in a lawsuit filed by someone else. As a matter of California law, Plaintiff's argument must fail.  *See Eastwood Homes, Inc. v. Hudson*, 161 Cal. App. 2d 532, 541 (1958) ("[C]ourts are not empowered … to depart from the plain meaning of the contract and insert a term or limitation not found therein.").  To the extent Plaintiff's argument imposes a special rule of contract interpretation applicable to arbitration agreements, that argument violates the FAA.  *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions.").

One aberrant state-court decision does not change this result.  The only case on which Plaintiff relies, *Bickerstaff v. Suntrust Bank*, 299 Ga. 459 (2016), is a Georgia state court decision that

---

[5]  This argument also fails because, assuming Timmerman and Albert opted out, neither one is an adequate or typical representative for the absent individuals in the putative class—who are bound to arbitrate—under Rule 23.  *See* Dkt. 22, at 7.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:18-CV-03421-JCS

Gibson, Dunn &
Crutcher LLP

interprets Georgia contract law without mentioning the FAA.  As Plaintiff concedes, *Bickerstaff* is neither controlling nor persuasive authority.  Opp. at 7.  *Bickerstaff* also cannot be reconciled with the FAA.  *See Reinkemeyer v. SAFECO Ins. Co. of Am.*, 166 F.3d 982, 984 (9th Cir. 1999) (courts may "disregard[] state court interpretations of state law … [that] violate federal law"); Opp. at 5–8 (not discussing FAA or controlling United States Supreme Court authority in relation to *Bickerstaff*).[6]

If the Court is inclined to grant the motion for leave to file a first amended complaint (it should not), Defendant intends to file a motion to compel arbitration based on the amended pleading.

## C.   Plaintiff Is Not Exempt from the FAA Under the Transportation Worker Exemption

Plaintiff argues that even if the Court rejects her request to amend her complaint, the Court should not compel arbitration because couriers fall within Section 1 of the FAA's "transportation worker" exemption.  Opp. at 2.  But Plaintiff's counsel has already lost that argument in this Court. *Id.* n.4 (conceding that this argument was rejected in *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1154 (N.D. Cal. 2015)).  If the Court does undertake this analysis, it should find that Plaintiff does not satisfy either of Section 1's criteria for exemption because (1) she is not an interstate "transportation worker," and (2) she did not enter into a "contract of employment" with Postmates.

### 1.   Plaintiff Is Not an Interstate "Transportation Worker"

Section 1 of the FAA exempts "contracts of employment" of certain interstate "transportation worker[s]" from the ambit of the statute.  *Circuit City Stores v. Adams*, 532 U.S. 105, 109 (2001). The Supreme Court has held that the Section 1 exemption, including the definition of interstate transportation workers, must be narrowly construed due to the strong federal policy favoring arbitration.  *Id.* at 118–19.  The Supreme Court has also made clear that the Section 1 exemption does not apply to every worker performing a task that could be subject to Congress's Commerce Clause powers; rather, it refers to workers actually engaged in interstate transportation of goods.  *See id.*  No court has ever applied the exception to intrastate local couriers like Plaintiff.

---

[6]  Plaintiff argues that courts "routine[ly]" permit amendment "to add additional lead plaintiffs" and claims that a court "allow[ed] plaintiffs to amend to add lead plaintiffs who opted out of arbitration, so that they can pursue the argument raised here under Bickerstaff."  Opp. at 5 n.6 (citing *Yucesoy v. Uber Techs., Inc.*, 15-cv-00262-EMC, Dkt. 287 (N.D. Cal. Mar. 5, 2018)).  But the *Yucesoy* court's order allowing amendment does not even mention *Bickerstaff*, and *Bickerstaff* was never even discussed at the hearing.  *See id.* Dkt. 288 (transcript of Mar. 1, 2018 hearing).

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:18-CV-03421-JCS

Gibson, Dunn &
Crutcher LLP

Plaintiff claims that in order for Section 1 to apply, "it is not necessary for the transportation workers themselves to have physically crossed state lines," because raw goods that are transformed into a meal and delivered *intrastate* are on a continuous "interstate journey."  Opp. at 15–16.  But courts have consistently held that Section 1's exemption applies only to workers who are regularly engaged in "interstate" commerce or activities, not local couriers like Plaintiff who work *intrastate* only.  *Circuit City*, 532 U.S. at 112; *see also Vargas v. Delivery Outsourcing, LLC*, 2016 WL 946112, at *4 (N.D. Cal. Mar. 14, 2016) (drivers were not "transportation workers" when they did not make interstate deliveries); *Jamaica Buses, Inc. v. Transport Workers' Union, AFL-CIO, Local 100*, 2003 WL 1621026, at *3 (E.D.N.Y. Mar. 26, 2003) (same); *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1289–90 (11th Cir. 2005) (Section 1 would not exempt "a pizza delivery person who delivered pizza across a state line to a customer in a neighboring town"); *Veliz v. Cintas Corp.*, 2004 WL 2452851, at *3, *10 (N.D. Cal. Apr. 5, 2004) (Section 1 did not apply where workers' job duties "d[id] not [] entail delivery of product in the same manner that a truck driver does").  Under this precedent, Section 1 does not exempt Plaintiff because, according to her own complaint, she "has worked as a courier for Postmates" in "Huntington Beach, California."  Compl. ¶ 3.  Plaintiff does not—nor can she—allege that she ever crossed state lines as a courier contracting with Postmates.

The cases cited by Plaintiff in support of her argument that she is an interstate "transportation worker" under Section 1 are either not binding, inapplicable, or both.  For example, neither *Gonzales v. Raich*, 545 U.S. 1 (2005) nor *Wickard v. Filburn*, 317 U.S. 111 (1942) even mentions the FAA, let alone the transportation worker exception.  In the circuit court cases on which Plaintiff relies, the workers in those cases were primarily engaged in the movement of goods across state (and national) lines.  In *International Brotherhood of Teamsters v. Kienstra Precast, LLC*, 702 F.3d 954, 956–57 (7th Cir. 2012), the Seventh Circuit found that the Section 1 exemption applied because mixed concrete truck drivers crossed state lines as part of their work for their employer.  In *Seven-Up/RC Bottling Co. of Southern California, Inc. v. Amalgamated Industrial Workers Union*, 183 F. App'x 643 (9th Cir. 2006), an unpublished and non-precedential Ninth Circuit case that may not even be cited, Circuit Rule 36-3(a), (c), the plaintiffs were "truck drivers, warehouse and other distribution employees, who transport[ed] goods in interstate commerce."  *Id.*, Appellee's Ans. Br. at *19, 2004

WL 3140594 (9th Cir. filed Dec. 10, 2004).  The District of Colorado's unpublished decision in *Christie v. Loomis Armored US, Inc.*, 2011 WL 6152979, at *3 (D. Colo. Dec. 9, 2011), found that currency delivery drivers were exempt under Section 1 when (unlike here) the company registered itself with the Department of Transportation and "identifie[d] itself as engaged in the business of interstate transport of currency."  And in *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 590, 594 (3d Cir. 2004), the Third Circuit concluded that a supervisor in a "package transportation and delivery company that engages in intrastate, interstate, and international shipping" was a "transportation worker."  Plaintiff does not (and cannot) present any similar evidence that she is regularly engaged in transporting goods over state lines, and she cannot qualify for the narrow exemption embodied in Section 1 of the FAA.

> ### 2.     Plaintiff Did Not Enter into a "Contract of Employment" with Postmates

Because Plaintiff is not an interstate "transportation worker," the Court need not reach the issue of whether she entered into a "contract of employment" with Postmates.  Nonetheless, an independent contractor agreement, such as the one Plaintiff signed in this case, is not a "contract of employment" under Section 1 of the FAA for several reasons.

*First*, the plain language of the FAA compels the conclusion that "contracts of employment" do not include independent contractors' contracts.  *See Black's Law Dictionary* 939 (10th ed. 2014) (treating "contract of employment" as synonymous with "employment contract," meaning "[a] contract between an employer and an employee").  By the time of the FAA's enactment in 1925, the distinction between employees and independent contractors was well-established.  *See* Restatement (First) of Agency § 2, cmt. a (1933); Restatement (First) of Torts § 409, cmt. a (1934) (distinguishing "independent contractor" from "servant").  In short, Congress knew it could exempt independent contractors under Section 1 and chose not to do so.

*Second*, the context in which the FAA uses the term "contracts of employment" bolsters the plain meaning of the text and confirms that independent contractor agreements are excluded from the definition of the term.  Section 1 exempts only certain "contracts of employment" from the FAA: those of "seamen, railroad employees," and other "transportation workers."  *Circuit City*, 532 U.S. at 109.  For those categories of workers, Congress intended to preserve the existing arbitration

procedures, *id.* at 121, which applied only to employees and not independent contractors.  *See, e.g.*, Railway Labor Act of 1926, May 20, 1926, c. 347, § 1, 44 Stat. 577, 45 U.S.C. § 151.

**Third**, the Supreme Court has consistently interpreted the Section 1 exception narrowly.  In *Circuit City*, for example, the Court rejected the proposition that the term "contracts of employment of . . . any other class of workers engaged in foreign or interstate commerce" included *all* workers in interstate commerce, instead holding that "Section 1 exempts from the FAA only contracts of employment of *transportation* workers" (which again, Plaintiff is not).  532 U.S. at 119, 121 (emphasis added).  And in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n.2 (1991), the Court interpreted the term "contract[] of employment" narrowly to include only the written agreement between the employer and employee, and not a related agreement.

**Finally**, a broad interpretation of "contracts of employment" would have profound, deleterious consequences for the economy, upsetting reliance interests, and depriving workers of efficient dispute resolution.  These are the very consequences the FAA is designed to avoid.

The Supreme Court will consider this Term whether independent contractor agreements can constitute "contracts of employment" for purposes of the FAA Section 1 exemption.  *New Prime Inc. v. Oliveira*, No. 17-430.  If this issue will be determinative of this Court's ruling on Postmates' motion to compel arbitration, then the Court should await the Supreme Court's answer.

### 3. The Applicability of Section 1 Should Be Delegated to an Arbitrator

In any event, the Court need not even reach the question of whether Section 1 applies, because the parties delegated *all* questions of arbitrability to the arbitrator.  "Where [a] contract contains an arbitration clause, there is a presumption of arbitrability." *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986).  So long as the delegation is "clea[r] and unmistakabl[e]," the court must enforce it.  *Mohamed*, 848 F.3d at 1208.

Here, the Mutual Arbitration Provision clearly and indisputably delegates gateway arbitrability questions to the arbitrator.  *See* Mot. at 7–8.  Plaintiff relies on *In re Van Dusen*, 654 F.3d 838, 843–45 (9th Cir. 2011) to argue that "[t]he question of whether a worker falls under" Section 1 "is an issue to be decided by the Court and is not to be delegated to the arbitrator."  Opp. at 2 n.2.  But *Van Dusen* is not sound precedent—circuit courts are split on whether courts must decide

1  Section 1's applicability in the first instance, *see Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769

2  (8th Cir. 2011), and the Supreme Court will resolve the split this Term in *Oliveira*.

3  There are also several reasons to believe that *Van Dusen* was wrongly decided.  For example,

4  while the FAA identifies particular issues that may not be delegated to the arbitrator, Section 1

5  disputes are not among them.  *See* 9 U.S.C. § 4.  In addition, arbitrators regularly decide threshold

6  arbitrability questions, including whether arbitration agreements are invalid due to coercion,

7  unconscionability, or other state-law grounds, *see e.g.*, *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,

8  137 S. Ct. 1421, 1428 (2017), and whether the parties' underlying dispute falls within the scope of

9  the arbitration agreement, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).  Moreover,

10  as the *Van Dusen* court recognized, courts have long been instructed "to avoid entanglement with the

11  merits of the underlying claims" when addressing whether a claim is arbitrable.  *In re Van Dusen*,

12  654 F.3d at 845–46 (citation omitted).  By asserting that Section 1 applies here, Plaintiff attempts to

13  litigate the merits of her entire case, Opp. at 10–13, blurring the distinction between questions of

14  arbitrability and the claims at issue in this case.  In such cases, the applicability of Section 1 should

15  be arbitrated to avoid subjecting the parties and the Court to a time consuming, weeks-long trial that

16  undermines the very purpose of arbitration.  *Concepcion*, 563 U.S at 348 ("the benefits of [bilateral]

17  private dispute resolution" include "lower costs, [and] greater efficiency and speed").

18  The Fleet Agreement could not have been clearer: *all* threshold questions of arbitrability are

19  delegated to an arbitrator.  The Court would be well within its authority to order the Section 1

20  question to arbitration.  *Mohamed*, 848 F.3d at 1208 ("clea[r] and unmistakabl[e]" delegation clauses

21  must be enforced).  But if the arbitrability of the Section 1 dispute is determinative, this Court should

22  await a decision from the Supreme Court in *Oliveira* before rendering a decision on this motion.

### 4.  A Pre-Certification Merits Decision Would Violate Defendant's Due Process Rights and the One-Way Intervention Rule

23

24  Plaintiff argues that because couriers are "subject to the 'transportation worker' exemption to

25  the FAA," the Court "will need to proceed to make a threshold determination as to whether Postmates

26  couriers are employees or independent contractors (and thus, whether the Section 1 transportation

27  worker exemption applies)."  Opp. at 11–12.  Plaintiff then includes three pages of merits argument

28  regarding why, in Plaintiff's view, she is not an independent contractor.  *Id*. at 11–13.

As a threshold matter, granting Plaintiff's ill-advised request for a full merits determination at this stage on **the** fundamental disputed issue in the case—Plaintiff's allegation that couriers are misclassified as independent contractors, *see* Compl. ¶¶ 2, 12, 20—would violate Postmates' due process rights. Such a decision would deprive Postmates of the "opportunity to present every available defense," *Lindsey v. Normet*, 405 U.S. 56, 66 (1972), as the parties have not yet engaged in discovery and cannot engage in discovery while Postmates' motion to compel arbitration is pending. Based on these due process concerns alone, this Court should reject Plaintiff's argument.

Furthermore, deciding the merits *before* the Court decides class certification (a decision which the Court need not reach, because Plaintiff's claims must be arbitrated) violates the one-way intervention rule, which precludes courts from conducting pre-class certification merits assessments. Any resolution of the independent-contractor-versus-employee issue at this time would irreparably prejudice Postmates, because it would allow absent class members to later rely upon the Court's merits determination when deciding whether or not to opt into the class. *See Khasin v. Hershey Co.*, 2014 WL 1779805, at *2 (N.D. Cal. May 5, 2014) ("The doctrine is 'one-way' because a plaintiff would not be bound by a decision that favors defendant, but could decide to benefit from a decision favoring the class.").

This Court should compel Plaintiff's claims to arbitration, where an arbitrator—rather than this Court, on a backdoor summary judgment motion—will resolve the merits of Plaintiff's claims.

**D.      Even if the Motion for Leave to Amend Is Granted, the Court Must Still Compel Individual Arbitration of Plaintiff's Purported Claim for Public Injunctive Relief**

Plaintiff argues that the Court may not compel arbitration of her purported claim for public injunctive relief. Opp. at 18 & n.22. As explained in Postmates' concurrently-filed opposition to Plaintiff's motion for leave to file a first amended complaint, the Court should reject Plaintiff's public injunctive relief argument because (1) Plaintiff does not seek public injunctive relief under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), and (2) *McGill* is preempted by the FAA.

***First***, Plaintiff has not stated a claim for "public injunctive relief." Plaintiff argues that the relief she seeks "is of enormous benefit and importance to the general public," Opp. at 19, but that is not the test for what constitutes public injunctive relief. The California Supreme Court has defined public injunctive relief as "injunctive relief that has the primary purpose and effect of prohibiting

unlawful acts that threaten future injury *to the general public*." *McGill*, 2 Cal. 5th at 951 (emphasis added). *McGill* made clear that "public injunctive relief" is fundamentally different from "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff." *Id.* at 955. The latter form of relief—which is private, not public—is precisely what Plaintiff seeks here. *See* Compl. ¶ 4 ("Plaintiff brings this action on her own behalf and on behalf of all others similarly situated," seeking individualized compensatory and declaratory relief). And although Plaintiff brings a claim pursuant to the UCL, Compl. ¶ 33, neither Plaintiff's original complaint nor proposed amended complaint seeks public injunctive relief pursuant to the UCL (or any other claim at issue in *McGill*). Instead, the proposed amended complaint requests an injunction "in the form of an order requiring Defendant to comply with the California Labor Code." Dkt. 15–1, at 10. But Labor Code violations, by definition, do not threaten future injury to the general public because they affect only the small subset of individuals Plaintiff argues should be classified as employees. Plaintiff does not seek "public injunctive relief."

**Second**, even if Plaintiff does state a claim for "public injunctive relief," she must still individually arbitrate her claims because the FAA preempts state law, like *McGill*, that "interferes with fundamental attributes of arbitration." *Concepcion*, 563 U.S at 344. In *Concepcion*, the Supreme Court emphasized that "[i]n bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Id.* at 348. Yet the *McGill* rule, which purports to treat agreements waiving the right to seek public injunctive relief as unenforceable under California law, 2 Cal. 5th at 961, eviscerates the very benefits of bilateral arbitration identified in *Concepcion*. Public injunctive relief is by definition a form of quasi-class relief that "benefits the general public," *id* at 955—the opposite of the one-on-one dispute resolution mechanism required by the Mutual Arbitration Provision. Applying the *McGill* rule here would allow Plaintiff to seek "public injunctive relief" on behalf of all other couriers in a judicial forum, despite Plaintiff's express agreement to individually arbitrate her claims. The FAA does not permit such a result, which would require a "'fundamental' change to the traditional arbitration process" and "would 'sacrific[e] the principal advantage of arbitration—its informality—

and mak[e] the process slower, more costly, and more likely to generate procedural morass than final judgment.'" *Epic Sys.*, 138 S. Ct. at 1623 (quoting *Concepcion*, 563 U.S. at 348).

Plaintiff's argument is inapposite because the relief Plaintiff seeks is not "public injunctive relief." But to the extent *McGill* applies, it poses no bar to enforcement of the parties' agreement to individually arbitrate their disputes. If the Court denies the motion to compel arbitration as to the purported claim for public injunctive relief, Postmates intends to seek an immediate appeal of that ruling and stay any claims not compelled to arbitration. 9 U.S.C. § 16(a)(1)(B).

**E.      Plaintiff Was on Notice of and Assented to the Terms of the Fleet Agreement**

Plaintiff also asserts a baseless argument that couriers were not "reasonably made aware" or "adequately put on notice" that they agreed to arbitrate their disputes with Postmates. Opp. at 20. In so arguing, Plaintiff urges this Court to adopt a test recently set forth by the First Circuit in *Cullinane v. Uber Technologies, Inc.*, 893 F.3d 53 (1st Cir. 2018) to determine whether an online contract is valid. Plaintiff's reliance on *Cullinane*, which applied Massachusetts law, is particularly confounding given that, as Plaintiff concedes, California has its own law governing the enforceability of online contracts. Opp. at 21 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)).

Because "arbitration is a matter of contract," *Concepcion*, 563 U.S. at 339, state law governing the formation of contracts is used to determine whether the parties agreed to arbitrate. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). California law applies because Plaintiff alleges she is a California resident and Postmates is based in California. Compl. ¶¶ 3, 5. Under California law, a valid contract exists when (1) the parties are capable of contracting, and there is (2) a lawful object, (3) mutual consent, and (4) sufficient cause or consideration. Cal. Civ. Code § 1550; *see also Div. of Labor Law Enforc. v. Transpacific Transp.*, 69 Cal. App. 3d 268, 275 (1977). The Mutual Arbitration Provision meets all of these requirements. *First*, the parties are capable of contracting. *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights."). *Second*, the Mutual Arbitration Provision has a lawful object: defining the terms of the relationship between Postmates and couriers, including the agreement to arbitrate any disputes. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005) (arbitration provision had lawful purpose of resolving litigation).

1    *Third*, there is mutual consent.  By accepting the Fleet Agreement, couriers affirm that they

2    have read the agreement and consented to all terms, including the Mutual Arbitration Provision,

3    which is referenced on the first page of the Fleet Agreement in bold and all-caps text.  Mot. at 2–4, 8.

4    Moreover, the updated Fleet Agreement Plaintiff accepted on May 15, 2018 makes clear that unless

5    the Mutual Arbitration Provision was "materially different from any prior arbitration provision with

6    Postmates to which [Plaintiff] was bound"—which was not the case—"[Plaintiff's] acceptance of this

7    Agreement does not create a renewed opportunity to opt out of arbitration.  Campbell Decl., Ex. E,

8    § 1C; *see also Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.* 89 Cal. App. 4th

9    1042, 1049–50 (2001) ("[O]ne who signs an instrument which on its face is a contract is deemed to

10   assent to all its terms.").  Plaintiff's attempt to opt out of the Mutual Arbitration was not effective,

11   however, and she is bound by her assent to the terms of the Fleet Agreement.

12       With online contracts, mutual assent turns on whether there is reasonable notice.  *Cordas v.*

13   *Uber Techs., Inc.*, 228 F. Supp. 3d 985, 991 (N.D. Cal. 2017).  Here, to sign up as a courier,

14   individuals must log in to the Postmates "Fleet App."  Campbell Decl. ¶ 14.  They then follow a

15   "click-through" process, during which they are presented with a link to a copy of the Fleet Agreement

16   that they can review before proceeding.  *Id.* ¶ 15.  They are prompted to click "Agree" or "Dismiss"

17   after the statement, "I agree to the Fleet Agreement" before proceeding.  *Id.* ¶ 16.  Couriers who click

18   "Agree" are emailed a copy of the agreement.  *Id.*  The Fleet Agreement is prominently displayed to

19   couriers in their personalized online portal and Fleet App, which they access using a unique username

20   and password.  *Id.* ¶ 17.  When Postmates updates the Fleet Agreement, couriers are again presented

21   with a copy of the Fleet Agreement and prompted to click "Agree" or "Dismiss."  *Id.* ¶ 18.

22       The First Circuit's decision in *Cullinane* is easily distinguishable.  In *Cullinane*, the court

23   focused on the fact that "Uber chose not to use a common method of conspicuously informing users

24   of the existence and location of terms and conditions: requiring users to click a box stating that they

25   agree to a set of terms, often provided by hyperlink, before continuing to the next screen."  893 F.3d

26   at 62.  But courts have repeatedly upheld online contracts that—like the Fleet Agreement—

27   conspicuously display the terms of the agreement and require users to affirmatively acknowledge that

28   they have read and agreed to the terms before signing.  *See, e.g.*, *Meyer v. Uber Techs., Inc*., F.3d 66,

78-79 (2d Cir. 2017) (mobile app that presented arbitration agreement through contrasting font and "blue and underlined" hyperlink provided "reasonably conspicuous notice of the Terms of Service as a matter of California law"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 911–12 (N.D. Cal. 2011) (compelling arbitration and finding videogame user bound by Zynga's online terms and conditions); *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, at *2, *4–5 (N.D. Cal. Apr. 1, 2005) (enforcing terms of use where website had a notice that read: "By continuing past this page and/or using this site, you agree to abide by the *Terms of Use* for this site").

Finally, the parties' mutual promises to arbitrate disputes constitute adequate consideration. *See Beggs Bros. Fruit Co. v. United Farmers Ass'n of Cal.* 41 Cal. App. 2d 766, 770 (1940) (agreement to arbitrate constitutes consideration). The Fleet Agreement is therefore valid and enforceable under California law. And even if the *Cullinane* test applied, it would be satisfied here, because Plaintiff received reasonably conspicuous notice of the contract terms and unambiguously manifested assent to those terms. Because a valid arbitration agreement exists between Plaintiff and Postmates, the Court should grant the motion to compel arbitration.

## F. Any Non-Arbitrable Claims Must Be Stayed Pending Arbitration of Lee's Other Claims

Because Plaintiff is bound by her agreement to arbitrate her claims against Postmates, the FAA requires that all of her claims be stayed pending completion of arbitration. 9 U.S.C. § 3. And even assuming *arguendo* that Lee asserts a nonarbitrable claim for public injunctive relief, or that any individual plaintiff validly opted out of the Mutual Arbitration Provision, the "inherent[] inseparab[ility]" of the arbitrable and nonarbitrable claims, as well as "considerations of economy and efficiency," counsel in favor of a stay of *all* claims. *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 842 (N.D. Cal. 2007) (citations omitted). If the motion to compel arbitration is denied with respect to any nonarbitrable claims, Postmates intends to exercise its right to an immediate appeal. 9 U.S.C. § 16(a)(1)(B).

## III. CONCLUSION

This Court should compel arbitration of the parties' dispute. To the extent the Court finds that certain of Plaintiff's claims are not arbitrable, this Court should stay proceedings pending appeal and arbitration of the remaining claims.

Dated:  September 6, 2018          GIBSON, DUNN & CRUTCHER LLP


By:      _/s/ Theane Evangelis_
                   Theane Evangelis

Attorneys for Defendant POSTMATES INC.

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:18-CV-03421-JCS