GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:    949.451.3800
Facsimile:    949.475.4668

Attorneys for Defendant POSTMATES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA LEE, KELLYN TIMMERMAN, and JOSHUA ALBERT on behalf of themselves and all others similarly situated,<br><br>               Plaintiff,<br><br>     v.<br><br>POSTMATES INC.,<br><br>               Defendant. | CASE NO. 3:18-cv-03421-JCS<br><br>**DEFENDANT POSTMATES INC.'S NOTICE OF MOTION AND MOTION TO (1) COMPEL ARBITRATION OF KELLYN TIMMERMAN'S CLAIMS AND (2) DISMISS JOSHUA ALBERT'S CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Declaration of Ashley Campbell and [Proposed] Order filed concurrently herewith]*<br><br>Action Filed:  May 8, 2018<br>Trial Date:  None Set<br><br>Date:     December 14, 2018<br>Time:     9:30 a.m.<br>Place:    Courtroom G<br>Judge:   Hon. Joseph C. Spero |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 14, 2018 at 9:30 a.m., or as soon thereafter as the matter can be heard before the Honorable Joseph C. Spero, in Courtroom G of the above-entitled Court, Fifteenth Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Postmates Inc. ("Postmates") will and hereby does move this Court, pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§3–4, and Federal Rule of Civil Procedure 12(b)(6), for an order:  (1) compelling individual arbitration of all claims asserted by Plaintiff Kellyn Timmerman and staying her claims pending the completion of arbitration; and (2) dismissing all claims asserted by Plaintiff Joshua Albert.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Ashley Campbell, all papers and pleadings on file with the Court in this matter, any other matters of which the Court may take judicial notice, and any oral argument of counsel.

Dated:  November 5, 2018                 GIBSON, DUNN & CRUTCHER LLP


                                         By:      */s/ Theane Evangelis*
                                                    Theane Evangelis
                                         Attorneys for Defendant POSTMATES INC.

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

      A.    Postmates' Fleet Agreement and Mutual Arbitration Provision ................... 2

      B.    Plaintiffs Timmerman and Albert ................................................................. 4

      C.    History of this Lawsuit ................................................................................. 5

III.  ARGUMENT ....................................................................................................... 6

      A.    The Court Should Compel Individual Arbitration of Timmerman's Claims ............... 6

            1.    Timmerman and Postmates Entered into a Valid Arbitration
                  Agreement that Covers This Dispute .................................................. 7

            2.    Timmerman's Agreement to Arbitrate Her Claims on an Individual
                  Basis, Not on Behalf of a Class, Must Be Enforced ......................... 9

            3.    Timmerman Cannot Avoid Individual Arbitration of Her Claims
                  by Bringing a Purported Request for "Public Injunctive Relief" ..................... 10

            4.    Timmerman's Claims Should Be Stayed Pending the Completion
                  of Arbitration ................................................................................... 11

      B.    The Court Should Dismiss Albert's Claims for Failure to State Claims
            Upon Which Relief Can Be Granted ........................................................... 12

            1.    Albert Fails to State a Claim for Reimbursement of Business
                  Expenses (Count I) ........................................................................... 13

            2.    Albert Fails to State a Claim for Minimum Wage Violations
                  (Count II) ......................................................................................... 15

            3.    Albert Fails to State a Willful Misclassification Claim (Count III) ............... 18

            4.    Albert Fails to State a Claim for Unlawful or Unfair Business
                  Practices (Count IV) ......................................................................... 20

            5.    Albert Fails to State a Claim for Unpaid Wages (Count V) ............. 20

            6.    Albert Fails to State a Claim for Breach of Contract (Count VI) ................. 22

IV.   CONCLUSION ................................................................................................. 24

Gibson, Dunn &
Crutcher LLP

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................12

5

6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................................12, 13, 16, 18, 19

7

8

*Bright v. Dennis Garberg & Assocs.,*
   No. CV 10-07933 AHM (JCx), 2011 WL 13147441 (C.D. Cal. May 4, 2011) ...........22

9

*Byrd v. Masonite Corp.,*
   No. EDCV 16-35 JGB (KKx), 2016 WL 756523 (C.D. Cal. Feb. 25, 2016) ...........15, 16, 20

10

11

*Cairo, Inc. v. Crossmedia Servs., Inc.,*
   No. C 04-04825 JW, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ...................................8

12

*Carter v. Raiser-CA, LLC,*
   No. 17-cv-00003-HSG, 2017 WL 4098858 (N.D. Cal. Sept. 15, 2017)........................16

13

14

*Chiron Corp. v. Ortho Diagnostic Sys. Inc.,*
   207 F.3d 1126 (9th Cir. 2000).........................................................................................7

15

16

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011) .................................................................................................9, 11

17

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014)....................................................................................12, 13

18

19

*Epic Systems Corp. v. Lewis,*
   138 S. Ct. 1612 (2018) ............................................................................................9, 11

20

*Franke v. Anderson Merchandisers LLC,*
   No. CV 17-3241 DSF, 2017 WL 3224656 (C.D. Cal. July 28, 2017)...........................14

21

22

*Gattuso v. Harte-Hanks Shoppers, Inc.,*
   42 Cal. 4th 554 (2007) .................................................................................................14

23

24

*Gomez v. Lincare, Inc.,*
   173 Cal. App. 4th 508 (2009)........................................................................................21

25

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
   561 U.S. 287 (2010).......................................................................................................7

26

27

*Green v. Party City Corp.,*
   No. CV-01-09681 CAS (EX), 2002 WL 553219 (C.D. Cal. Apr. 9, 2002)...................22

28

*Greenwich Ins. Co. v. Rodgers*,
   729 F. Supp. 2d 1158 (C.D. Cal. 2010).........................................................................23

*Hall v. Plastipak*,
   No. 15-11428, 2015 WL 5655888 (E.D. Mich. Sept. 25, 2015)....................................17

*Hammitt v. Lumber Liquidators*,
   19 F. Supp. 3d 989 (S.D. Cal. 2014)..............................................................................15

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (N.D. Cal. 2014) .............................................................................12

*Iskanian v. CLS Transp. of L.A., LLC*,
   59 Cal. 4th 348 (2014) .....................................................................................................9

*Kellgren v. Petco Animal Supplies, Inc.*,
   No. 13-CV-0644 W (KSC), 2013 WL 12076473 (S.D. Cal. Sept. 13, 2013)................19

*Landers v. Quality Commc'ns, Inc.*,
   771 F.3d 638 (9th Cir. 2014), *as amended* (Jan. 26, 2015).........................12, 14, 15, 16, 17, 19, 22

*Lopez v. Wendy's Int'l, Inc.*,
   No. CV 11-00225 MMM, 2011 WL 6967932 (C.D. Cal. Sept. 19, 2011) .....................17

*Magana v. DoorDash, Inc.*,
   No. 18-cv-03395-PJH, 2018 WL 5291988 (N.D. Cal. Oct. 22, 2018) ..............1, 7, 9, 10

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ...............................................................................................1, 10

*Mendiola v. CPS Security Solutions, Inc.*,
   60 Cal. 4th 833 (2015) ...................................................................................................21

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)...............................................................................................8

*Miller v. Amazon.com, LLC*,
   No. 17-cv-03488-MMC, 2018 WL 2215600 (N.D. Cal. Mar. 29, 2018) .......................16

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016).........................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).............................................................................................................7

*Noe v. Superior Court*,
   237 Cal. App. 4th 316 (2015).........................................................................................18

*Owens v. Local No. 169*,
   971 F.2d 347 (9th Cir. 1992)..........................................................................................22

Gibson, Dunn &
Crutcher LLP

iii

*Perez v. Wells Fargo & Co.*,
　75 F. Supp. 3d 1184 (N.D. Cal. 2014) ........................................................................16

*Pruell v. Caritas Christi*,
　678 F.3d 10 (1st Cir. 2012) .........................................................................................17

*Rent-A-Center, W., Inc. v. Jackson*,
　561 U.S. 63 (2010) ........................................................................................................7

*Rice v. Fox Broad. Co.*,
　330 F.3d 1170 (9th Cir. 2003) .....................................................................................20

*Rio v. Uber Techs., Inc.*,
　No. 15-cv-03667-EMC, 2016 WL 10837864 (N.D. Cal. Mar. 28, 2016)................16, 21

*Rojo v. Kliger*,
　52 Cal. 3d 65 (1990) ...................................................................................................22

*Romano v. SCI Direct, Inc.*,
　No. 17-cv-03537-ODW (JEM), 2017 WL 8292778 (C.D. Cal. Nov. 27, 2017) ...........18

*Rosset v. Hunter Eng'g Co.*,
　No. C 14-01701 LB, 2014 WL 3569332 (N.D. Cal. July 17, 2014)..............................18

*Smith v. Level 3 Commc'ns Inc.*,
　No. C 14-05036 WHA, 2014 WL 7463803 (N.D. Cal. Dec. 30, 2014).........................20

*Stuart v. RadioShack Corp.*,
　641 F. Supp. 2d 901 (N.D. Cal. 2009) ...................................................................14, 15

*Swift v. Zynga Game Network, Inc.*,
　805 F. Supp. 2d 904 (N.D. Cal. 2011) ..........................................................................8

*Tan v. GrubHub, Inc.*,
　171 F. Supp. 3d 998 (N.D. Cal. 2016) ....................................................................15, 17

*Thomas v. Home Depot, USA, Inc.*,
　527 F. Supp. 2d 1003 (N.D. Cal. 2007) .......................................................................22

*Villalpando v. Exel Direct Inc.*,
　No. 12-CV-04137 JCS, 2014 WL 1338297 (N.D. Cal. Mar. 28, 2014) .......................18

*In re Wal–Mart Stores, Inc. Wage & Hour Litig.*,
　505 F. Supp. 2d 609 (N.D. Cal. 2007) .........................................................................22

*Wilson v. Hewlett-Packard Co.*,
　668 F.3d 1136 (9th Cir. 2012)................................................................................15, 19

*Yucesoy v. Uber Techs., Inc.*,
　No. 15-cv-262-EMC, 2015 WL 6955410 (N.D. Cal. Nov. 10, 2015) ..........................22

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Yucesoy v. Uber Techs., Inc.*,
    No. 15-cv-262-EMC, 2016 WL 493189 (N.D. Cal. Feb. 9, 2016) ................................................21

**Statutes**

9 U.S.C. § 2 ................................................................................................................................................7

9 U.S.C. § 3 ..............................................................................................................................................11

9 U.S.C. § 4 ................................................................................................................................................7

28 U.S.C. § 1332(d) ..................................................................................................................................5

28 U.S.C. § 1453 ......................................................................................................................................5

28 U.S.C. § 1711–1715 ............................................................................................................................5

Cal. Lab. Code § 204(a) ..........................................................................................................................20

Cal. Lab. Code § 226.8(i)(4) ..................................................................................................................19

Cal. Lab. Code § 2802(a) ....................................................................................................................13, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This Court has already enforced Defendant Postmates Inc.'s arbitration agreement and ordered Plaintiff Lee's claims to individual arbitration.  Plaintiffs Timmerman and Albert likewise should not be permitted to proceed with this action in this Court because Timmerman's claims must be compelled to arbitration, and Albert's claims must be dismissed with prejudice for failure to state a claim for relief and other pleading deficiencies.

First, this Court should grant Postmates' motion to compel individual arbitration of Timmerman's claims.  Like Lee, when Timmerman signed up to access Postmates' online platform and perform deliveries as an independent contractor, she accepted Postmates' Fleet Agreement, which contains a conspicuous Mutual Arbitration Provision.  By accepting the Fleet Agreement—which this Court has already found constitutes a valid and enforceable contract—and failing to validly opt out of the Mutual Arbitration Provision, Timmerman agreed to resolve any disputes with Postmates through individual arbitration.  Moreover, Plaintiffs' addition of a claim for purported "public injunctive relief" does not exempt Timmerman from arbitration under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961 (2017).  This Court has already rejected that argument as to Lee, and it should do so again as to Timmerman on the grounds that Plaintiffs have not sought "public injunctive relief" and because *McGill* is preempted by the FAA.  *See* Order Regarding Motion to Compel Arbitration and Motion for Leave to File Amended Complaint ("Order"), Dkt. 31, at 16; *see also Magana v. DoorDash, Inc.*, No. 18-cv-03395-PJH, 2018 WL 5291988, at *7 (N.D. Cal. Oct. 22, 2018) (plaintiff seeking injunctive relief for Labor Code claims did not assert a claim for "public injunctive relief" under California law).  Thus, under the FAA, and for the same reasons that this Court compelled arbitration of Lee's claims, the parties' agreement must be enforced and Timmerman must individually arbitrate her claims against Postmates.  Timmerman's claims must also be stayed pending the completion of arbitration.

Second, the Court should dismiss Albert's claims with prejudice because Albert fails to allege facts sufficient to show plausible entitlement to relief on any of the First Amended Complaint's six causes of action.  The First Amended Complaint is comprised of nothing more than boilerplate

recitals of the legal elements of Albert's claims and conclusory allegations without any factual support.  Moreover, Albert's "willful misclassification" claim fails for the additional reason that no private right of action exists under section 226.8.  And his breach of contract claim must be dismissed because it is preempted by his section 204 claim.  These multiple, significant deficiencies in the First Amended Complaint are fatal to and require dismissal with prejudice of Albert's claims.

Accordingly, Postmates respectfully requests that this Court grant its motion to compel individual arbitration as to Timmerman's claims and grant its motion to dismiss Albert's claims.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Postmates' Fleet Agreement and Mutual Arbitration Provision

Postmates provides and maintains an online marketplace and mobile platform connecting individual customers with local merchants and independent contractor couriers to facilitate the purchase, fulfillment, and, when applicable, delivery of goods from merchants to customers.  Declaration of Ashley Campbell ("Campbell Decl.") ¶ 2.  When customers place orders for delivery from local merchants through Postmates' online platform, nearby couriers receive a notification and can choose, at their discretion, whether to accept an offer to pick up and complete the delivery.  *Id*.

When new couriers sign up to access delivery opportunities through the Postmates mobile platform, they must follow a "click-through" process, during which prospective couriers are presented with a link to a copy of the Fleet Agreement.  Campbell Decl. ¶ 4.  When couriers are presented with this link, they may review the terms of the Fleet Agreement and then must click "Agree" or "Dismiss" after the statement, "I agree to the Fleet Agreement" before proceeding.  *Id*. ¶ 5; *see also* Order at 7–8 (courts applying California law have typically held that such "click-through" processes are "sufficient to establish contract formation").  Couriers who click the link are presented with the following all-caps text on the first page of the Fleet Agreement:

> IMPORTANT: PLEASE REVIEW THIS AGREEMENT CAREFULLY. **SPECIFICALLY, PLEASE REVIEW THE MUTUAL ARBITRATION PROVISION IN SECTION 11,** WHICH REQUIRES THE PARTIES (UNLESS YOU OPT OUT OF ARBITRATION AS PROVIDED BELOW) TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, THROUGH FINAL AND BINDING ARBITRATION. BY ACCEPTING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD, AND VOLUNTARILY AGREED TO ALL OF THE TERMS OF THIS AGREEMENT, INCLUDING THE MUTUAL ARBITRATION

Gibson, Dunn & Crutcher LLP

PROVISION, AND THAT YOU HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION.

Campbell Decl. Exs. C, D (emphasis added).  The very first sentence of the Fleet Agreement further informs couriers that they will be "engaged in the business of performing . . . delivery services" as "an independent contractor."  Campbell Decl. Ex. D.  As independent contractors, couriers acknowledge that they will be "free to select those times [they] wish[] to use the Postmates Platform to be available to receive Delivery Opportunities" and "free to accept, reject, or ignore any particular Delivery Opportunities made available to Contractor through the Platform as [they] see[] fit to maximize [their] opportunity to profit."  *Id.*  Couriers also acknowledge that they "ha[ve] the sole right to control the manner in which Deliveries are performed and the means by which those deliveries are completed."  *Id.*

The Mutual Arbitration Provision, contained in Section 11 of the Fleet Agreement, broadly provides that Postmates and couriers "mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court."  *Id*. Exs. C § 11A, D § 11A.  The Mutual Arbitration Provision also states that couriers "expressly agree that this Mutual Arbitration Provision is governed exclusively by the Federal Arbitration Act (9 U.S.C. §§ 1–16)," and that the Mutual Arbitration Provision "shall apply to any and all claims between the Parties, including but not limited to those arising out of or relating to . . . *the Contractor's classification as an independent contractor* . . . and all other aspects of the Contractor's relationship with Postmates." *Id*. Exs. C § 11A(i), D § 11A(i) (emphasis added); Order at 7–9 (holding that Fleet Agreement and Mutual Arbitration Provision were valid and covered Plaintiff Dora Lee's misclassification claims). The Fleet Agreement also provides that "any dispute relating to the interpretation, applicability, enforceability, or formation" of the Mutual Arbitration Provision (with the exceptions of the class action and representative action waiver provisions) must be decided "*only* [by] an arbitrator, and not any federal, state, or local court."  *Id.* Exs. C § 11A(ii), D § 11A(ii) (emphasis added).

Two provisions of the Mutual Arbitration Provision also warn couriers that by accepting the Mutual Arbitration Provision, they agree to arbitrate their disputes with Postmates on an individual basis and waive the right to bring class or representative actions.  These provisions are captioned "CLASS ACTION WAIVER—PLEASE READ" and "REPRESENTATIVE ACTION WAIVER—

PLEASE READ" in bold and all-caps text.  *Id*. Exs. C § 11B(ii)–(iii), D § 11B(ii)–(iii).  The Class Action Waiver provides that "all disputes or claims between the parties will be resolved in individual arbitration," that couriers "waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action, or to participate in any class and/or collective action," and that "an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action."  *Id*. Exs. C § 11B(ii), D § 11B(ii).

The Fleet Agreement also informs couriers at multiple points that they have the right to opt out of arbitration.  The first page of the Fleet Agreement states in all-caps text that couriers will be required to resolve disputes with Postmates on an individual basis "UNLESS YOU OPT OUT OF ARBITRATION AS PROVIDED BELOW."  Campbell Decl. Exs. C, D.  The Mutual Arbitration Provision explains that couriers may opt out by submitting an "Opt Out Form" within thirty days of accepting the Fleet Agreement.  *Id*. ¶ 8; *id*. Exs. C § 11B(ix), D § 11B(ix).

Couriers who accept the Fleet Agreement are provided with multiple opportunities to review the Fleet Agreement and the Mutual Arbitration provision.  *See* Order at 7 (discussing several ways in which couriers are presented with and may access the Fleet Agreement).  In addition to being able to review the Fleet Agreement during the "click-through" process, couriers are also emailed a copy of the agreement after they click "Agree."  Campbell Decl. ¶ 5.  The Fleet Agreement is also prominently displayed to couriers in their personalized online portal and Fleet App, which couriers access using a unique username and password.  *Id*. ¶ 6. Furthermore, when Postmates updates the Fleet Agreement, couriers are again presented with a copy of the Fleet Agreement and prompted to click "Agree" or "Dismiss."  *Id*. ¶ 7.

**B.  Plaintiffs Timmerman and Albert**

Plaintiff Kellyn Timmerman accepted the Fleet Agreement on May 24, 2017, and by doing so agreed to resolve any dispute with Postmates—including her classification as an independent contractor—through final and binding arbitration.  Campbell Decl. ¶ 10.  Timmerman did not exercise her right to opt out of the Mutual Arbitration Provision within thirty days.  *Id.*  On May 11, 2018, Timmerman accepted an updated version of the Fleet Agreement.  *Id*. ¶ 11.  Under the terms of the updated Fleet Agreement, Timmerman "acknowledge[d] and agree[d]" that she would not have a

"renewed opportunity to opt out of arbitration" unless the Mutual Arbitration Provision was materially different from a prior one to which she was bound. *Id.* ¶ 12, Ex. D § 1C.  On June 1, 2018, Timmerman emailed Postmates attempting to opt out of the Mutual Arbitration Provision, but because the terms of the Mutual Arbitration Provision in the updated Fleet Agreement were not materially different from the terms of the original Mutual Arbitration Provision, her attempted opt-out was not effective.  *Id.* ¶ 12; Order at 8 ("The Fleet Agreement does not provide a renewed opportunity to opt out when changes are made to the agreement unless such changes materially affect the arbitration clause," and the 2017 and 2018 agreements "reflect[ed] materially identical arbitration terms").

Plaintiff Joshua Albert accepted the Fleet Agreement and agreed to its terms on August 6, 2018, after Postmates filed its motion to compel arbitration of Plaintiff Dora Lee's claims and stay civil proceedings.  Campbell Decl. ¶ 13.  Albert completed his first delivery using the Postmates platform on August 17, 2018, three days before Plaintiff Dora Lee filed her motion for leave to amend her complaint and her opposition to Postmates' motion to compel arbitration and stay civil proceedings.  *Id.*  Albert emailed Postmates to opt out of the Mutual Arbitration Provision on August 20, 2018 at 1:17 p.m. PDT, just 21 minutes before Plaintiff Dora Lee filed her motion for leave to amend her complaint.  *Id.*  Albert completed his last delivery using the Postmates platform on August 30, 2018, and is no longer active on the platform.  *Id.* ¶ 14.

**C.     History of this Lawsuit**

Plaintiff Dora Lee filed the initial Complaint in San Francisco County Superior Court on May 8, 2018, challenging her classification as an independent contractor.  Dkt. 1-1, Ex. B.  Postmates removed the action to federal court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711–1715.  Dkt. 1-1.

On October 15, 2018, this Court granted Postmates' Motion to Compel Arbitration of Lee's claims.  Order at 1.  Specifically, the Court found that Lee had validly consented to individually arbitrate her disputes with Postmates and could not avoid arbitration by relying on other putative class members' failure to opt out, the FAA's "transportation worker" exemption, or her request for "public injunctive relief."  *Id.* at 9, 14, 17.  The Court further noted that although Lee attempted to

opt out of arbitration under the updated Fleet Agreement, "she was not permitted to do so at that time," because Lee was bound by the arbitration agreement in a prior version of the Fleet Agreement. *Id.* at 8.  The Court explained that "[t]he Fleet Agreement does not provide a renewed opportunity to opt out when changes are made to the agreement unless such changes materially affect the arbitration clause." *Id.*

On October 22, 2018, after the Court compelled Lee's claims to individual arbitration, Plaintiffs filed the First Amended Complaint.  The First Amended Complaint alleges six causes of action for violations of Labor Code sections 2802, 226.8, 1194, 1197, and 204; violation of California Business and Professions Code 17200, *et seq*.; and breach of contract, all arising out of Postmates' alleged misclassification of couriers as independent contractors.  The First Amended Complaint also adds two new named plaintiffs and a new "claim" for "public injunctive relief."

Postmates now moves to compel Timmerman's claims to individual arbitration and to dismiss Albert's claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

### III.    ARGUMENT

**A.    The Court Should Compel Individual Arbitration of Timmerman's Claims**

The First Amended Complaint adds Timmerman as a named plaintiff in this action, even though Timmerman, like Lee, accepted the Fleet Agreement and failed to effectively opt out of the Mutual Arbitration Provision.  As this Court held in its Order compelling arbitration of Lee's claims, the Mutual Arbitration Provision constitutes a valid bilateral arbitration agreement and covers Timmerman's dispute with Postmates over her classification as an independent contractor.  *See* Order at 8–9.  And as this Court also recognized, the fact that Timmerman purports to seek "public injunctive relief" does not excuse Timmerman from arbitration.  *Id.* at 17.  Like Lee, Timmerman is thus bound under the Fleet Agreement and must resolve her disputes with Postmates in individual arbitration.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. 3:18-CV-03421-JCS

### 1.   Timmerman and Postmates Entered into a Valid Arbitration Agreement that Covers This Dispute

Section 2 of the FAA, which governs this dispute, provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (emphasis added).  The court's role in addressing the question of arbitrability is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If both requirements are met, the Court must grant a party's motion to compel arbitration "in accordance with the terms of the agreement."  9 U.S.C. § 4.  As this Court acknowledged in its order compelling arbitration of Lee's claims, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Order at 6 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).  Moreover, courts may apply a presumption in favor of arbitration as "an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts."  *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)) (internal quotation marks omitted).

The parties may also "clearly and unmistakably" indicate their intent to delegate the two "threshold issues" of arbitrability to the arbitrator, such that the arbitrator has the sole authority to resolve questions relating to the "enforceability, revocability or validity" of an arbitration provision.  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016); *see also* Order at 2 (noting that under the Fleet Agreement, threshold questions of arbitrability "must be arbitrated"); *Magana*, 2018 WL 5291988, at *7 (compelling arbitration of plaintiff's claims where arbitration agreement contained delegation clause).

Here, the parties "clearly and unmistakably" manifested their intent that only an arbitrator, not the Court, may decide the "threshold issues" of arbitrability.  *Mohamed*, 848 F.3d at 1208–09.  The Mutual Arbitration Provision's delegation clause provides that "*only* an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute

Gibson, Dunn & Crutcher LLP

relating to the interpretation, applicability, enforceability, or formation of th[e] Mutual Arbitration Provision." Campbell Decl. Exs. C § 11A(ii), D § 11A(ii) (emphasis added). Thus, only an arbitrator should decide "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130.

Should this Court consider the "threshold" arbitrability questions, however, these questions favor arbitration, as the Court indicated in its Order granting Postmates' Motion to Compel Arbitration as to Plaintiff Lee's claims. In its Order, the Court noted that "courts applying California law have typically held that procedures like the one employed by Postmates here are sufficient to establish contract formation." Order at 8; *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78–79 (2d Cir. 2017) (mobile app that presented arbitration agreement through contrasting font and "blue and underlined" hyperlink provided "reasonably conspicuous notice of the Terms of Service as a matter of California law"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 911–12 (N.D. Cal. 2011) (compelling arbitration and finding videogame user bound by Zynga's online terms and conditions); *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. C 04-04825 JW, 2005 WL 756610, at *2, *4–5 (N.D. Cal. Apr. 1, 2005) (enforcing terms of use where website had a notice that read: "By continuing past this page and/or using this site, you agree to abide by the Terms of Use for this site").

By following the "click-through" process and accepting the Fleet Agreement, Timmerman entered into a valid arbitration agreement under California law. During this process, Timmerman was provided with a conspicuous link to the Fleet Agreement, and she was prompted to click "Agree" or "Dismiss" after the statement, "I agree to the Fleet Agreement" before proceeding. Campbell Decl. ¶¶ 4–5. After Timmerman clicked "Agree," she was provided with a copy Fleet Agreement by email and through her personalized online portal and the "Fleet App." *Id.* ¶¶ 5–6. Timmerman was thus put on notice of and assented to the terms of the Fleet Agreement, including the Mutual Arbitration Provision. *See* Order at 7–8.

Furthermore, Timmerman did not validly opt out of the Mutual Arbitration Provision despite having an opportunity to do so. In its Order compelling Lee to arbitration, this Court found that despite multiple belated attempts, Lee did not effectively opt out. The Court explained:

"The Fleet Agreement does not provide a renewed opportunity to opt out when changes are made to the agreement unless such changes materially affect the arbitration clause. . . compare *id*. Ex. B (2017 Fleet Agreement) ¶ 11B with *id*. Ex. C (2018 Fleet Agreement, reflecting materially identical arbitration terms) ¶ 11B. ***Thus, although Lee attempted to opt out of the 2018 Fleet Agreement on May 22 and 23, 2018, she was not permitted to do so at that time.***"

Order at 8 (emphasis added).  The same is true of Timmerman.  Like Lee, Timmerman chose not to opt out of the Mutual Arbitration Provision in the Fleet Agreement she accepted when signing up to be a courier on May 24, 2017.  Campbell Decl. ¶ 10.  By later accepting an updated Fleet Agreement, Timmerman "acknowledge[d] and agree[d]" that she would not have a "renewed opportunity to opt out of arbitration" unless the Mutual Arbitration was materially different from a prior one to which she was bound, which was not the case.  *Id*. ¶ 12, Ex. D § 1C.  Thus, Timmerman's attempt to opt out of the Mutual Arbitration Provision on June 1, 2018 was not effective, and she is bound by her assent to the terms of the Fleet Agreement.[1]

Moreover, the Mutual Arbitration Provision expressly covers all of the claims in this litigation, which are predicated on Plaintiffs' claim that they were misclassified as independent contractors.  *See* FAC ¶¶ 2, 23, 34, 35.  Therefore, because the parties entered into a valid arbitration agreement that covers this dispute, and for the same reasons that this Court compelled arbitration of Lee's claims, Timmerman's claims must be sent to arbitration.

### 2.     Timmerman's Agreement to Arbitrate Her Claims on an Individual Basis, Not on Behalf of a Class, Must Be Enforced

The Mutual Arbitration Provision includes a Class Action Waiver that requires Plaintiffs to resolve all disputes through individual arbitration.  In *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018), the U.S. Supreme Court made clear that courts must "enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."  The enforcement of class action waivers, the Court reasoned, is consistent with the fundamental principle that courts must honor contracting parties' agreements "to specify the rules that would govern their

---

[1]  To the extent Plaintiffs may argue that Albert validly opted out of the Mutual Arbitration Provision and his opt-out may be imputed to other class members, including Timmerman, this Court has already rejected that argument in this case.  *See* Order at 9 ("Lee may not avoid arbitration on the basis that other putative class representatives opted out of the arbitration agreement, when Lee herself did not.")  Nor is Timmerman exempt from arbitration under Section 1 of the FAA's "transportation worker" exemption.  *See* Order at 14; *see also Magana*, 2018 WL 5291988, at *5.

Gibson, Dunn &
Crutcher LLP

arbitrations," including "their intention to use individualized rather than class or collective action procedures."  *Id.* at 1621; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) ("[C]lass arbitration . . . is inconsistent with the FAA."); *Iskanian v. CLS Transp. of L.A., LLC*, 59 Cal. 4th 348, 366 (2014) (recognizing that the FAA preempts state laws that treat employment class action waivers as unenforceable).

Moreover, the delegation clause in the Mutual Arbitration Provision contains a carve-out exception for questions concerning the agreement's class and representative action waiver provisions. Campbell Decl. Exs. C § 11A(ii), D § 11A(ii) ("[T]he [delegation] clause shall not apply to the Class Action Waiver and Representative Action Waiver.").  Therefore, this Court may properly consider the enforceability of the Class Action Waiver and should find that the parties' agreement to individual arbitration must be enforced according to its terms.

### 3. Timmerman Cannot Avoid Individual Arbitration of Her Claims by Bringing a Purported Request for "Public Injunctive Relief"

Plaintiffs' First Amended Complaint purports to request public injunctive relief, which Plaintiffs will no doubt contend is another ground on which Postmates cannot compel arbitration of Timmerman's claims.  *See* Motion for Leave to File First Amended Complaint, Dkt. 15, at 3, n.2 (*citing McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961 (2017)).  The Court has already rejected this argument in its Order compelling arbitration of Lee's claims.  Order at 17.  Moreover, (1) Plaintiffs do not seek public injunctive relief as that term is used in *McGill*, and (2) *McGill* is preempted by the FAA.

*First*, Plaintiffs have not stated a claim for "public injunctive relief."  In *McGill*, the California Supreme Court made clear that "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff" *does not* constitute "public injunctive relief."  *McGill*, 2 Cal. 5th at 955. That, however, is exactly what Plaintiffs seek in this action.  *See* FAC ¶ 36 (Count IV seeking declaratory and injunctive relief on ground that "[a]s a result of Defendant's unlawful conduct, *Plaintiffs and class members* suffered injury in fact" (emphasis added)).  Furthermore, Plaintiffs purport to seek public injunctive relief "in the form of an order requiring Defendant to comply with

the California Labor Code," FAC ¶ 10, but as Judge Hamilton recently explained in another case brought by Plaintiffs' counsel, Labor Code violations, by definition, do not threaten future injury to the general public. *Magana*, 2018 WL 5291988, at *6 (N.D. Cal. Oct. 22, 2018) (granting motion to compel arbitration and holding that plaintiff's claims for public injunctive relief under the Labor Code "would be entirely the opposite of what *McGill* requires—any benefit to the <u>public</u> would be derivat[ive] of and ancillary to the benefit to DoorDash's <u>employees</u>" (emphasis in original)). Because Plaintiffs do not seek "public injunctive relief," Timmerman's claims must be compelled to arbitration.

     *Second*, even if Plaintiffs state a claim for "public injunctive relief" (they do not), Timmerman must still individually arbitrate her claims because the FAA preempts state law, like *McGill*, that "interferes with fundamental attributes of arbitration." *Concepcion*, 563 U.S at 344.  In *Concepcion*, the Supreme Court emphasized that "[i]n bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Id*. at 348.  To the extent *McGill* permits litigation of public injunctive relief claims, such a rule would eviscerate the benefits of bilateral arbitration identified in *Concepcion* by "sacrific[ing] the principal advantage of arbitration—its informality—and mak[ing] the process slower, more costly, and more likely to generate procedural morass than final judgment. *Epic Sys.*, 138 S. Ct. at 1623 (*quoting Concepcion*, 563 U.S. at 348).  Accordingly, the Court should do what it stated it was inclined to do at the hearing on Postmates' motion to compel arbitration of Lee's claims, and "throw out the rule of *McGill* as it applies to this because that's plainly inconsistent with Supreme Court jurisprudence on this issue."  Transcript of Case Management Conference, Oct. 12, 2018, at 21.  And because *McGill* is preempted by the FAA, Plaintiffs' purported request for public injunctive relief does not exempt Timmerman from individually arbitrating her claims.

### 4.     Timmerman's Claims Should Be Stayed Pending the Completion of Arbitration

     As with Lee, Timmerman's claims should also be stayed pending the individual arbitration of her claims.  *See* Order at 1.  The FAA provides that while arbitration is pending, a court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in

accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added).  Timmerman's claims

should thus be stayed.

**B.     The Court Should Dismiss Albert's Claims for Failure to State Claims Upon Which Relief Can Be Granted**

In addition to compelling Timmerman's claims to individual arbitration, the Court should also

dismiss Albert's claims with prejudice under Federal Rule of Civil Procedure 12(b)(6).  To "survive a

motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Establishing the plausibility

of a complaint's allegations . . . 'requires the reviewing court to draw on its judicial experience and

common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–96 (9th Cir.

2014) (quoting *Iqbal*, 556 U.S. at 679); *see also Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638,

641 (9th Cir. 2014), *as amended* (Jan. 26, 2015).  While "a court should 'assume the[] veracity' of

'well pleaded factual allegations,'" allegations that "are no more than conclusions, are not entitled to

the assumption of truth.'" *Eclectic Props. E., LLC*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 679).

Rule 8 "requires 'more than labels and conclusions,'" and "plaintiffs must include sufficient 'factual

enhancement' to cross 'the line between possibility and plausibility.'" *Id*. at 995 (quoting *Twombly*,

550 U.S. at 557).  "In sum, if the facts alleged foster a reasonable inference of liability—stronger than

a mere possibility—the claim survives; if they do not, the claim must be dismissed."  *Hendricks v.

StarKist Co.*, 30 F. Supp. 3d 917, 924–25 (N.D. Cal. 2014).

The Court should dismiss Albert's claims.  Albert never alleges that he actually performed

any deliveries using the Postmates app, nor does he plead facts about any purported deliveries or

what he was paid (or purportedly owed) for those deliveries.  Nor does Albert plead facts related to

any out-of-pocket business expenditures he allegedly incurred and for which he now seeks

reimbursement.  Rather, the First Amended Complaint simply recites the language of various Labor

Code provisions and contends that Postmates violated them.  That is insufficient to state a claim.

1. **Albert Fails to State a Claim for Reimbursement of Business Expenses (Count I)**

Albert alleges that because Postmates classified him as an independent contractor, he was not reimbursed for expenses allegedly incurred while performing deliveries using the Postmates platform pursuant to California Labor Code section 2802.  FAC ¶ 21.  Albert alleges that such costs generally included "[couriers'] cost of maintaining their vehicles, gas, insurance, and phone and data expenses for running the Postmates Application," but he provides no detail whatsoever about the expenses that members of the putative class, let alone Albert himself, actually incurred.  FAC ¶ 21.  Albert's allegations thus lack "sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 557).

California Labor Code section 2802 provides, in relevant part:

> An employer shall indemnify *his or her employee* for *all necessary expenditures or losses* incurred by the employee in *direct consequence of the discharge of his or her duties*, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code § 2802(a) (emphasis added).  Albert fails to establish any entitlement to reimbursement under section 2802 because he has not provided any non-conclusory allegations to support his claim.

*First*, the First Amended Complaint contains only conclusory allegations of Albert's "expenditures or losses."  Cal. Lab. Code § 2802(a).  Albert merely alleges that couriers in general incurred expenses such as "the cost of maintaining their vehicles, gas, insurance, and phone and data expenses for running the Postmates Application."  FAC ¶ 21; *see also id.* ¶ 34.  But Albert does not allege a single instance in which he incurred a particular expense that he would not have incurred otherwise if not for his use of the Postmates platform.  Albert does not allege, for example, what type of vehicle maintenance expenses he incurred, when he incurred them, or whether he would have incurred them had he not contracted with Postmates.  Nor does Albert allege what additional vehicle insurance expenses he was required to incur as a direct result of his use of the Postmates platform.  Similarly, while the First Amended Complaint includes a single, vague reference to "phone and data expenses," Albert has not alleged that he purchased a cell phone or incurred any related costs as a result of his use of the Postmates platform.  Indeed, he alleges no facts regarding what kind of cell phone service plan he has (i.e., whether it is an unlimited plan, provides a specific amount of minutes

or text messages per month, or charges for each individual call or text message), or whether under that plan he incurred any charges for calls or cellular data as a result of work-related cell phone usage.  Nor does Albert allege that he incurred any work-related expenses in any particular week that he used the platform.  Without factual allegations demonstrating that Albert actually "incurred" out-of-pocket "expenditures or losses" and specifying at least a single week in which such losses were incurred, Albert cannot state a plausible section 2802 claim.  Conclusory allegations that merely "set[] forth the elements of the claim" are insufficient under *Twombly* and *Iqbal*.  *See Landers*, 771 F.3d at 640; *see also Franke v. Anderson Merchandisers LLC*, No. CV 17-3241 DSF (AFMx), 2017 WL 3224656, at *7 (C.D. Cal. July 28, 2017) (dismissing claim for business expenses where complaint merely alleged "use of personal phones for business-related purposes, costs incurred to comply with Defendants' dress code, and costs incurred using their personal vehicles for work travel," but "fail[ed] to provide a single instance when such a cost was incurred").

        *Second*, Albert fails to allege facts showing that any allegedly incurred expenses that were "necessary" to or "in direct consequence" of his use of the Postmates platform.  Albert makes only the conclusory allegation that the unspecified costs he purportedly incurred were a "necessary expenditure to obtain employment with Postmates," and that such costs "should have been borne" by Postmates.  FAC ¶¶ 21, 34.  But reimbursement of expenses under section 2802 is required only when the incurred expenses or losses were "necessary" to and "in direct consequence" of an employee's "discharge of his or her duties."  Cal. Lab. Code § 2802(a).  Section 2802 thus only requires an employer to reimburse its employees for expenses they "actually and necessarily incur in performing their employment tasks," and whether an expense was necessary "depends on the reasonableness of the employee's choices."  *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 567–68 (2007).  Albert fails to allege facts sufficient to support these essential elements of his expense reimbursement claim, and his vague and unspecific allegation that he incurred costs as a "necessary expenditure" to perform deliveries using the Postmates platform is insufficient to cross the plausibility threshold.  As in *Landers*, Albert has made only "generalized allegations" that such expenses were required, with no supporting factual details about the nature of the purported requirements.  *Landers*, 711 F.3d. at 646.

*Third*, Albert fails to allege any facts establishing that Postmates knew or had reason to know that he incurred any expenditures subject to reimbursement. "[B]efore an employer's duty to reimburse is triggered, it must either know or have reason to know that the employee has incurred an expense." *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 904 (N.D. Cal. 2009). Only after "the employer has such knowledge" does it have a "duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense." *Id.* As the court explained in *Stuart*, "if the employer had no knowledge or reason to know that the expense was incurred and the employee withheld that information, it would hardly seem fair to hold the employer accountable." *Id.* at 902–03. Here, Albert has not even alleged that Postmates knew or had reason to know that he was incurring any work-related expenses, let alone alleged any specific facts demonstrating such knowledge. *Cf. Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) ("[P]laintiffs must sufficiently allege that a defendant was aware of" the circumstances giving rise to its legal obligations "to survive a motion to dismiss.").

Because Albert fails to plead that Postmates had a duty under 2802 to reimburse him for any expenses, his section 2802 claim fails "as a matter of law" and should be dismissed. *Hammitt v. Lumber Liquidators*, 19 F. Supp. 3d 989, 1001 (S.D. Cal. 2014).

### 2.    Albert Fails to State a Claim for Minimum Wage Violations (Count II)

Albert also fails to plead sufficient factual allegations to support his minimum wage claim. Albert makes only general, conclusory allegations that Postmates "failed to ensure that its couriers receive the applicable state minimum wage for all hours worked, and couriers frequently do not average minimum wage for all hours worked." FAC ¶ 22; *see also id.* ¶ 2 (Postmates "failed to pay required minimum wage"); *id.* ¶ 38 (Postmates "fail[ed]to pay its employees minimum wage for all hours worked").

In *Landers*, the Ninth Circuit explained that allegations must provide more than "generalized allegations asserting violations of the minimum wage" laws in order to survive a motion to dismiss.[2]

---

[2] "Although *Landers* discussed FLSA claims," courts have determined that "its reasoning applies to California Labor Code claims as well." *Tan v. GrubHub, Inc.,* 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016); *see also Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 WL 756523, at *3 (C.D. Cal. Feb. 25, 2016).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. 3:18-CV-03421-JCS

Gibson, Dunn &
Crutcher LLP

*Landers*, 171 F.3d at 646.  To meet this threshold, plaintiffs must provide facts "regarding a given workweek when [they] . . . [were] not paid minimum wages."  *Id.*  Plaintiffs must also provide sufficient detail about the number of compensable hours worked and the amount of wages paid in order to "support a reasonable inference" of undercompensation.  *See id.*  For example, "[a] plaintiff may establish a plausible minimum wage claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, . . . or any other facts that will permit the court to find plausibility." *Id.* at 645.  These specific factual allegations are necessary, the court held, in light of *Twombly* and *Iqbal*'s mandate that "a complaint must contain sufficient factual content 'to state a claim to relief that is plausible on its face,'" and not "merely set[] forth the elements of the claim.  *Id.* at 641 (quoting *Twombly*, 550 U.S. at 570).

Albert's vague allegations here that Postmates "failed to ensure that its couriers receive the applicable state minimum wage for all hours worked," and that couriers "frequently do not average minimum wage for all hours worked" fall far short of the *Landers* plausibility standard.  FAC ¶ 22. Albert does not plead even basic facts about the work he allegedly performed or the circumstances under which he was allegedly paid less than minimum wage.  Applying *Landers*, courts have repeatedly dismissed minimum wage claims premised on similarly threadbare allegations.  *See, e.g.*, *Miller v. Amazon.com, LLC*, No. 17-cv-03488-MMC, 2018 WL 2215600, at *1 (N.D. Cal. Mar. 29, 2018) (minimum wage claim dismissed where plaintiff failed "to 'allege facts showing that there was a given week in which [she] was entitled to but denied minimum wages'" (quoting *Landers*, 771 F.3d at 645)); *Carter v. Raiser-CA, LLC*, No. 17-cv-00003-HSG, 2017 WL 4098858, at *3 (N.D. Cal. Sept. 15, 2017) (dismissing minimum wage claims where complaint alleged "in a conclusory fashion that Defendants 'did not pay Plaintiff the prevailing minimum wage, for each hour worked'"); *Rio v. Uber Techs., Inc.*, No. 15-cv-03667-EMC, 2016 WL 10837864, at *3 (N.D. Cal. Mar. 28, 2016) (dismissing minimum wage claim where "Plaintiffs do not even allege that they were personally not paid overtime or less than minimum wage, let alone a week in which they were not paid overtime or minimum wage"); *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 WL 756523, at *3 & n.6 (C.D. Cal. Feb. 25, 2016) (dismissing minimum wage claim because "[n]owhere in the Complaint does Plaintiff identify a specific instance in which he was denied a minimum wage"; instead, "[t]he

Complaint alleges only: 'During the relevant time period, Defendants failed to pay minimum wage to Plaintiff and the other class members as required'"); *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1191 (N.D. Cal. 2014) (dismissing minimum wage claims where "there are no details pled as to any specific named plaintiff—not where he/she worked, not what his/her job duties were, not what the circumstances were under which any plaintiff was allegedly not paid minimum wage").  Non-specific allegations that couriers "frequently" do not earn minimum wage (FAC ¶ 22) are "so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual'" and should be dismissed.  *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012); *see also Landers*, 771 F.3d at 642, 644 (citing *Pruell* with approval).

Not only does the First Amended Complaint fail to describe a single instance in which Albert was paid less than minimum wage, but it also never attempts to explain the methods by which Albert calculates the minimum wages he is allegedly owed.  *Landers*, 171 F.3d at 645 ("A plaintiff may establish a plausible [minimum wage] claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid . . . .").  For instance, Albert does not explain "what period of time or type of conduct [he is] counting as hours worked."  *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1008 (N.D. Cal. 2016).  Albert has also not alleged any facts explaining what hourly and regular rates of pay he used to compute minimum wage pay, how he calculated those rates, or which records he consulted in doing so.  *See Hall v. Plastipak*, No 15-11428, 2015 WL 5655888, at *3 (E.D. Mich. Sept. 25, 2015).  Albert alleges that he received a "fee per delivery plus a certain amount of 'boost pay,'" but he provides no additional details about the amount of fees or boost pay received or the period of compensable hours worked.  FAC ¶ 22.  Without "basic factual allegations" to support his minimum wage claims, Albert cannot show a plausible entitlement to relief.  *Tan*, 171 F. Supp. 3d at 1008; *see also Landers*, 171 F.3d at 646.

Furthermore, Albert's minimum wage claim must also fail because it is derivative of his claim for business expenses reimbursement, which is deficient for the reasons stated above.  Section III.B.1, *supra*.  Albert does not allege which costs, or even what types of costs, he chose to deduct when making any minimum wage calculations.  *See* FAC ¶¶ 21–22, 36.  Albert's vague references to "the cost of maintaining [couriers'] vehicles, gas, insurance, and phone and data expenses," FAC ¶ 21,

without more, leaves Postmates with no way of determining whether these alleged "costs" were even conceivably reimbursable expenses under any California law.  *See* Section III.B.1, *supra*.  Because Albert's minimum wage claim relies on his conclusory business expenses reimbursement claim, Albert's minimum wage claim fails.  *See Lopez v. Wendy's Int'l, Inc.*, No. CV 11-00225 MMM (JCx), 2011 WL 6967932, at *12 (C.D. Cal. Sept. 19, 2011) (minimum wage claim that was possibly derivative of a meal and rest break claim was insufficiently pleaded because the break claim on which it relied was also conclusory).

Albert's minimum wage allegations do not contain "enough facts to state a claim to relief that is plausible on its face" and should be dismissed.  *Twombly*, 550 U.S. at 570.

### 3.   Albert Fails to State a Willful Misclassification Claim (Count III)

Albert further alleges that Postmates' conduct "in continuing to classify couriers as independent contractors notwithstanding the California Supreme Court's decision in *Dynamex Operations W., Inc. v. Superior Court*, 2018 WL 1999120 (Cal. Apr. 30, 2018) . . . violates Cal. Lab. Code § 226.8 and constitutes willful misclassification."  FAC ¶ 8.  Albert's claim fails, however, for two independent reasons: (1) there is no private right of action for violations of section 226.8, and (2) even if there was a right of action under section 226.8, Plaintiffs have not sufficiently pleaded a "willful misclassification" claim.

*First*, California courts have repeatedly held that section 226.8 does not provide a private right of action.  "The existence of a private right of action depends on whether the Legislature has manifested an intent to create such a right, which is revealed through the language of the relevant statute and its legislative history."  *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL 1338297, at *14–19 (N.D. Cal. Mar. 28, 2014) (Spero, M.J.).  In *Villalpando*, this Court dismissed with prejudice a plaintiff's section 226.8 claim for willful misclassification after finding no clear legislative intent to create a private right of action under section 226.8.  *Id.* at *19, 21.  Since *Villalpando*, courts in this Circuit have consistently followed its reasoning and concluded that section 226.8 does not provide individual plaintiffs with a private right of action to enforce the statute.  *See, e.g., Rosset v. Hunter Eng'g Co.*, No. C 14-01701 LB, 2014 WL 3569332, at *8 (N.D. Cal. July 17, 2014) ("Section 226.8 does not explicitly create a private right of action and neither the legislative

1   history nor the other Labor Code provisions impliedly create one, either.") (citing *Villalpando*, 2014

2   WL 1338297, at *19); *Romano v. SCI Direct, Inc.*, No. 17-cv-03537-ODW (JEM), 2017 WL

3   8292778, at *8 (C.D. Cal. Nov. 27, 2017) (finding no private right of action for a violation of section

4   226.8 and granting motion to dismiss the claim without leave to amend).  In *Noe v. Superior Court*,

5   237 Cal. App. 4th 316, 338 (2015), the California Court of Appeals came to the same conclusion,

6   reasoning that "the only specific language regarding enforcement of section 226.8 appears in

7   subdivision (g), which authorizes the Labor Commissioner"—not a private plaintiff—"to enforce the

8   statute."  Because Albert does not have a private right of action under section 226.8, his claim must

9   be dismissed with prejudice.

10       *Second*, even if a private right of action existed under section 226.8, Albert's claim must fail

11   because Albert has not plausibly alleged that Postmates "willfully misclassified" him or other

12   members of the putative class.  To survive a motion to dismiss a "willful misclassification" claim, a

13   plaintiff must plead sufficient facts to support a claim that the defendant "avoid[ed] employee status

14   for an individual by *voluntarily and knowingly* misclassifying that individual as an independent

15   contractor."  Cal. Lab. Code § 226.8(i)(4) (emphasis added).  Albert's allegations in the First

16   Amended Complaint fall far short of meeting this standard.  Indeed, although Albert repeatedly

17   alleges in a conclusory fashion that "Postmates has willfully misclassified its couriers," FAC ¶¶ 2, 23,

18   35, "[n]oticeably absent from the Complaint are any facts which plausibly suggest that [defendant]'s

19   alleged violations were willful."  *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-CV-0644 W (KSC),

20   2013 WL 12076473, at *3 (S.D. Cal. Sept. 13, 2013) (granting motion to dismiss where plaintiff's

21   allegations that defendant "willfully violated the FLSA" "lack[ed] sufficient factual matter to satisfy

22   the plausibility standard set forth in *Iqbal* and *Twombly*"); *Wilson v. Hewlett-Packard Co.*, 668 F.3d

23   1136, 1147–48 (9th Cir. 2012) (affirming dismissal of complaint where plaintiffs' allegations of

24   defendants' knowledge were "merely conclusory").  Nor does Albert's "formulaic recitation of the

25   elements" of the "ABC" test set forth in *Dynamex*, FAC ¶¶ 15–18, suffice to state a claim that

26   Postmates willfully misclassified him as an independent contractor.  *Landers*, 771 F.3d at 641

27   ("Under *Twombly*, a complaint that offers . . . 'a formulaic recitation of the elements of a cause of

28   action[,]' . . . will not suffice." (quoting *Twombly*, 550 U.S. at 555, 557)).  In short, because Albert

1   has not pleaded even the most basic facts to support his allegation that Postmates "willfully

2   misclassified" couriers as independent contractors, he cannot show plausible entitlement to relief.

3       For these reasons, Albert's willful misclassification claim should be dismissed without leave

4   to amend.

5       **4.    Albert Fails to State a Claim for Unlawful or Unfair Business Practices**
        **(Count IV)**

6

7       Albert's claim under the California Business and Professions Code derives entirely from the

8   preceding three claims.  In Count IV of the First Amended Complaint, Albert alleges that Postmates'

9   conduct "constitutes unlawful business acts or practices, in that Defendant has violated California

10  Labor Code Sections 2802, 1194, 1197, and 226.8."  FAC ¶ 37.  Because Albert has failed to state a

11  plausible claim for relief under any of the predicate statutes (see Sections III.B.1, 2, and 3), this

12  derivative claim also fails and should be dismissed.  *See, e.g.*, *Smith v. Level 3 Commc'ns Inc.*, No. C

13  14-05036 WHA, 2014 WL 7463803, at *4 (N.D. Cal. Dec. 30, 2014) ("To state a claim under Section

14  17200, a plaintiff must adequately plead a violation of a specific alternative statute."); *see also Rice v.*

15  *Fox Broad. Co.*, 330 F.3d 1170, 1182 (9th Cir. 2003) (where a "claim under § 17200 is dependent"

16  on another claim, the two claims "rise and fall together" (internal quotation marks omitted)).

17      **5.    Albert Fails to State a Claim for Unpaid Wages (Count V)**

18      Albert's claim for unpaid wages under California Labor Code section 204 must also be

19  dismissed.  Section 204 requires that "[a]ll wages, other than those mentioned in Section 201, 201.3,

20  202, 204.1, or 204.2, earned by any person in any employment" be paid "twice during each calendar

21  month, on days designated in advance by the employer as the regular paydays."  Cal. Lab. Code

22  § 204(a).  Albert alleges that Postmates violated section 204 when it "fail[ed] to pay its employees for

23  the entirety of their wait time."  FAC ¶ 38.  Albert alleges that Postmates contracted with couriers to

24  pay a specified rate, "typically between 7 and 12 cents per minute," while couriers are "waiting at the

25  delivery pickup," but that Postmates "has failed to ensure that couriers are paid the correct amount for

26  their wait time and has shortchanged couriers by underreporting the amount of time that couriers

27  spend waiting for a delivery."  *Id.* ¶ 24.

28

1    Albert fails to allege sufficient facts showing a plausible entitlement to unpaid wages for

2    "waiting time."  As a preliminary matter, Albert does not plead any facts relating to a single example

3    of a time when he should have been compensated for "waiting time" but was not.  *Byrd v. Masonite*

4    *Corp.*, 2016 WL 756523, at *4 & n.10 (C.D. Cal. Feb. 25, 2016) (dismissing claim where the plaintiff

5    did not allege "a single instance in which [the defendant] failed to pay Plaintiff all wages due to him

6    during his employment"; instead, the plaintiff alleged only that "[d]uring the relevant time period,

7    Defendants intentionally and willfully failed to pay Plaintiff and the other class members all wages

8    due to them").  Nor does the First Amended Complaint offer facts relating to Albert's alleged

9    agreement with Postmates that would entitle him to "waiting time" compensation in the first place.

10    Furthermore, as with his minimum wage claim, Albert does not explain his methods for

11    calculating the "correct amount for [couriers'] wait time."  FAC ¶ 38.  As the California Supreme

12    Court made clear in *Mendiola v. CPS Security Solutions, Inc.*, 60 Cal. 4th 833 (2015), not all "on-call

13    time constitutes hours worked," and courts must instead weigh a host of factors "to determine

14    whether on-call time is compensable in a given case."  *Id.* at 840–41.  Specifically, "courts

15    considering whether on-call time constitutes hours worked have primarily focused on the extent of

16    the employer's control," and that fact-intensive inquiry turns on "various factors," including, for

17    example, whether the plaintiff "actually engaged in personal activities during call-in time."  *Id.* at

18    840–41.  In addition, courts consider whether the "[o]n-call waiting time . . . is spent primarily for the

19    benefit of the employer and its business."  *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 523–24

20    (2009) (on-call time was not compensable where plaintiffs "confirmed they had engaged in some

21    personal activities while on call").

22    Here, Albert does not explain when he believes couriers' compensable "waiting" time begins

23    (e.g., when a courier first contacts a local merchant regarding a pending order, when a courier arrives

24    at the local merchant's store to pick up an order, etc.) or what constitutes compensable time (e.g.,

25    whether couriers are entitled to "waiting time" pay when they are waiting for one order while also

26    performing compensable tasks for another order, whether couriers are entitled to "waiting time" pay

27    if they are free to engage in personal activities during that time, or whether couriers waiting on two

28    orders simultaneously can collect double "waiting time" pay)  Given that the measurement of

compensable waiting time "is a fact-specific inquiry," such additional facts are necessary to support a "reasonable inference" that Albert was not paid wages to which he was entitled.  *Yucesoy v. Uber Techs., Inc.*, No. 15-cv-262-EMC, 2016 WL 493189, at *5–6 (N.D. Cal. Feb. 9, 2016) (dismissing overtime and minimum wage claims for failure to allege sufficient facts to show why waiting time is compensable); *see also Rio*, 2016 WL 10837864, at *3 (dismissing claims where plaintiffs failed to explain "how they define 'work,' i.e., whether Plaintiffs contend that the drivers [are] at work whenever the Uber app is on"); *Landers*, 771 F.3d at 646 (dismissing overtime wage claims for failure to plead sufficient facts); *Owens v. Local No. 169*, 971 F.2d 347, 351 (9th Cir. 1992) (listing factors to consider in analyzing the degree to which employee is free to engage in personal activities, such as whether the frequency of calls was unduly restrictive and whether a fixed time limit for responses was unduly restrictive).  In the absence of more specific facts, "Plaintiff['s] theory is unclear' as to whether and when he may be entitled to compensation for "wait time."  *Yucesoy v. Uber Techs., Inc.*, No. 15-cv-262-EMC, 2015 WL 6955410, at *4 (N.D. Cal. Nov. 10, 2015) (plaintiff's claims failed where he "provided no information for how this hourly amount was calculated and why [his] hours logged … should be considered compensable time").

Albert's "generalized allegations" regarding unpaid "waiting time" wages do not cross the line from "possibility" to "plausibility" and should be dismissed.  *Landers*, 771 F.3d at 646.

### 6.    Albert Fails to State a Claim for Breach of Contract (Count VI)

Finally, Count VI alleges that Postmates "has a contract with couriers to properly calculate and remit to them payment for their 'wait time' at the rate specified for their market," and "underpaid couriers for their wait time in violation of the contract."  FAC ¶ 38.  Albert's breach of contract claim fails, however, because it is superseded by Albert's section 204 claim.  And in any event, Albert's allegations are wholly insufficient to support a breach of contract claim on which relief may be granted.

Under California law, "where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive."  *In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 618 (N.D. Cal. 2007) (citing *Rojo v. Kliger*, 52 Cal. 3d 65, 79 (1990)); *see also Thomas v. Home Depot, USA, Inc.*,

527 F. Supp. 2d 1003, 1009 (N.D. Cal. 2007) (dismissing plaintiff's conversion claim as improper where plaintiff alleged conversion based on Labor Code violations).  Federal courts have consistently found that the California Labor Code provides a "comprehensive and detailed remedial scheme" that preempts common law claims for violations of the statute.  *See, e.g.*, *Wal-Mart Stores*, 505 F. Supp. 2d at 618–19*; Green v. Party City Corp.*, No. CV-01-09681 CAS (EX), 2002 WL 553219, at *4 (C.D. Cal. Apr. 9, 2002); *Bright v. Dennis Garberg & Assocs.*, No. CV 10-07933 AHM (JCx), 2011 WL 13147441, at *5 (C.D. Cal. May 4, 2011).  A common law claim that is based on an alleged Labor Code violation therefore cannot stand because the legislature has already created an extensive remedial scheme to address violations.

Here, all of Albert's breach of contract allegations are based on the comprehensive remedial scheme provided by the Labor Code, which governs wages and hours worked.  Moreover, Albert's breach of contract claim is specifically premised on Postmates' alleged violation of section 204 of the Labor Code by underpaying couriers for wait time.  FAC ¶ 38.  Indeed, both claims are based on the exact same allegations and seek the same relief.  *See* FAC ¶ 24 ("Postmates has failed to ensure that couriers are paid the correct amount for their wait time. . . . Thus, Postmates has failed to pay couriers the monies they are owed under the contract, which constitutes a breach of contract and a failure to pay all earned wages.").  Accordingly, Albert's section 204 claim supersedes and preempts his common law breach of contract claim, which must be dismissed.

Even if Albert's breach of contract claim is not superseded, his claim would still fail because Albert has not pleaded sufficient facts to satisfy the *Iqbal* and *Twombly* standard.  "To state a claim for breach of contract under California law, a plaintiff must allege (1) the existence of a contract; (2) that he has performed or that his nonperformance is excused; (3) defendant's breach of the contract; and (4) damages resulting from the breach."  *Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1163 (C.D. Cal. 2010).  Albert's allegations fall far short.  For example, Albert fails to offer sufficient facts relating to the terms of the "payment schedule" that allegedly provides for "waiting time" compensation, which is not contained in the Fleet Agreement.  Furthermore, Albert's sole allegation regarding Postmates' alleged breach is that Postmates "has failed to ensure that couriers are paid the correct amount for their wait time and has shortchanged couriers by underreporting the amount of

time that couriers spend waiting for a delivery." FAC ¶ 24.  But as explained above, *see* Section III.B.5, Albert does not allege any specific instances when Postmates failed to adequately pay him for "wait time," nor does he provide any explanation about how Postmates allegedly "underreport[ed]" his "wait time."  Albert's sixth cause of action therefore must be dismissed.

**IV.    CONCLUSION**

For the foregoing reasons, Postmates respectfully requests that this Court enter an order: (1) compelling Timmerman to arbitrate her claims on an individual basis and staying her claims pending arbitration; and (2) dismissing Albert's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).


DATED:  November 5, 2018                             GIBSON, DUNN & CRUTCHER LLP

                                                                    */s/ Theane Evangelis*
                                                                    Theane Evangelis

                                                                    Attorneys for Defendant POSTMATES INC.


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document was served by electronic filing on November 5, 2018, on all counsel of record.


                                                                    */s/ Theane Evangelis*
                                                                    Theane Evangelis

                                                                    Attorneys for Defendant POSTMATES INC.