UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA LEE, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>POSTMATES INC.,<br><br>　　　　Defendant. | Case No. 18-cv-03421-JCS<br><br>**ORDER REGARDING MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS**<br><br>Re: Dkt. No. 36 |

## I.　INTRODUCTION

The Court previously granted a motion to compel arbitration of Plaintiff Dora Lee's claims in this putative class action regarding alleged employee misclassification, but allowed an amended complaint asserting claims by Plaintiffs Kellyn Timmerman and Joshua Albert. Plaintiffs are or were couriers engaged in intrastate delivery of various products. Defendant Postmates Inc. now moves to compel arbitration of Timmerman's claims pursuant to the Federal Arbitration Act ("FAA") and to dismiss Albert's claims. The Court held a hearing on December 14, 2018. For the reasons discussed below, Postmates' motion is GRANTED in large part. Timmerman's claims are subject to arbitration, and Albert's claims are dismissed, with leave to amend except as to his claim under Labor Code section 226.8, which is dismissed with prejudice. At Plaintiffs' request, Lee and Timmerman's claims are dismissed in light of the requirement that they arbitrate, without prejudice. To avoid confusion in the event that the Court has occasion to consider Lee and Timmerman's claims after an appeal or arbitration, Albert's claims are SEVERED and will proceed under a new case number.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. The Fleet Agreement

Postmates requires its couriers to agree to its "Fleet Agreement" before they can make deliveries. Cartes Decl. (dkt. 14-1) ¶ 4; Campbell Decl. (dkt. 36-1) ¶¶ 4–5. According to Postmates' records, Lee and Timmerman agreed to a 2017 version of the Fleet Agreement (Campbell Decl. Ex. C) when they signed up to work for Postmates that year, and all three Plaintiffs agreed to an amended version of the Fleet Agreement in 2018 (Campbell Decl. Ex. D). *See* Cartes Decl. ¶¶ 7, 9; Campbell Decl. ¶¶ 10–11, 13. The two versions of the Fleet Agreement are substantively identical for the purpose of the present motion. *See* Campbell Decl. Exs. C, D. The portion of the Fleet Agreement relevant here is section 11, the "Mutual Arbitration Provision," which requires the parties to arbitrate all disputes under the Federal Arbitration Act, including most threshold questions regarding the applicability of the arbitration provision. Campbell Decl. Ex. C § 11A(i)–(ii).

Within the section addressing arbitration, the agreement also includes a waiver of class and representative actions:

> CLASS ACTION WAIVER—PLEASE READ. Postmates and Contractor mutually agree that any and all disputes or claims between the parties will be resolved in individual arbitration. The Parties further agree that by entering into this Agreement, they waive their right to have any dispute or claim brought, heard, or arbitrated as a class and/or collective action, or to participate in any class and/or collective action, and an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action ("Class Action Waiver").

*Id.* § 11B(ii); *see also id.* § 11B(iii) (including substantially identical language pertaining to "any representative action"). Unlike other threshold questions of arbitrability, which the Fleet Agreement states themselves must be arbitrated, any claim that the class or representative action waiver is unenforceable or void must be determined by a court, and cannot be determined by an arbitrator. *Id.* § 11B(iv).

The Fleet Agreement provides couriers the right to opt out of the arbitration requirement within thirty days after they electronically execute the Fleet Agreement. *Id.* § 11B(ix). Modifications to the Fleet Agreement do not provide a renewed opportunity to opt out of

2

arbitration unless Postmates modifies the arbitration provision. *Id.*

**B. Previous Order**

The Court previously held that Lee assented to Postmates' Fleet Agreement and its arbitration clause, based on evidence submitted by Postmates that Lee executed Postmates' "click-through" agreement. Order re Lee (dkt. 31) at 7–9.[2] The Court held that Lee did not validly opt out of the arbitration clause because she did not attempt to do so within the thirty days provided by the agreement she executed in 2017, and although she attempted to opt out after executing a revised agreement in 2018, the terms of the Fleet Agreement did not provide a renewed opportunity to opt out at that time because Postmates had not made any material change to the arbitration provision. *Id.* at 8. The Court declined to consider arguments raised for the first time at the hearing that October 12, 2018 hearing that Postmates improperly presented a renewed contract directly to Lee while she was represented by counsel, and that her attempt to opt out in 2018 should have been effective because the 2017 agreement was limited to a one-year term. *Id.* at 8–9. The Court rejected Plaintiffs' argument that, under the Georgia Supreme Court's decision in *Bickerstaff v. SunTrust Bank*, 299 Ga. 459 (2016), claims brought by other plaintiffs could serve to toll the period for Lee to opt out of arbitration, noting that the Ninth Circuit had rejected Plaintiffs' proposed application of that decision. Order re Lee at 9–10 (citing *O'Connor v. Uber Techs.*, 94 F.3d 1087, 1093 (9th Cir. 2018)).

The Court held that Plaintiffs had not met their burden to show that Lee fell within the FAA's exception for transportation workers engaged in interstate commerce, because Plaintiffs presented no evidence Lee actually delivered goods across state lines, that "her job involved handling goods *in the course of interstate commerce*," or that "Postmates itself was in the business of transporting goods between states." *Id.* at 11–14. The Court declined to reach the questions of whether Plaintiffs are employers or independent contractors and whether an independent contractor can invoke the transportation worker exception, and held that the California Supreme

---

[2] *Lee v. Postmates Inc.*, No. 18-cv-03421-JCS, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018). Citations herein to the Court's previous order refer to page numbers of the version in the Court's ECF docket.

3

Court's decision in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017), does not stand for the proposition that claims for "public injunctive relief" under California's Unfair Competition Law (the "UCL") must proceed in court rather than in arbitration. Order re Lee at 10–11, 14–17. The Court granted Plaintiffs' motion to add Timmerman and Albert as additional plaintiffs and declined to stay proceedings on their claims. *Id.* at 18–22.[3]

### C. First Amended Complaint

Relying on the standard that the California Supreme Court recently articulated in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), Plaintiffs' first amended complaint alleges that Postmates misclassifies its couriers, who deliver not only prepared meals but also goods that "originate[] across state lines," as independent contractors rather than employees. 1st Am. Compl. ("FAC," dkt. 35) ¶¶ 2, 11, 23. Plaintiffs allege generally that Postmates failed to reimburse couriers for business expenses, failed to pay them minimum wage, and failed to pay agreed rates for waiting time, but include few allegations pertaining to Lee, Timmerman, and Albert specifically. *See id.* ¶¶ 10–26. The first amended complaint asserts the following claims: (1) failure to reimburse business expenses in violation of section 2802 of the California Labor Code, *id.* ¶ 34; (2) willful misclassification in violation of section 226.8 of the Labor Code, *id.* ¶ 35; (3) failure to pay minimum wage in violation of sections 1197 and 1194 of the Labor Code, *id.* ¶ 36[1][4]; (4) unlawful business practices under the UCL, *id.* ¶ 36[2]; (5) failure to pay wages in violation of section 204 of the Labor Code, *id.* ¶ 37; and (6) breach of contract related to payment for waiting time, *id.* ¶ 38.

### D. The Parties' Arguments

Postmates argues that Timmerman's claims are subject to arbitration for the same reasons as Lee's. Mot. (dkt. 36) at 6–11. According to Postmates, Timmerman agreed the Fleet Agreement and did not validly opt out of its arbitration provision, which is enforceable, and

---

[3] An attentive reader might notice that portions of the present order regarding arbitration of Timmerman's claims use language similar to the previous order addressing arbitration of Lee's claims. The issues overlap significantly, and Plaintiffs have not presented new evidence or arguments that alter the Court's conclusions.
[4] Plaintiffs' first amended complaint includes two paragraphs with the number 36, differentiated herein as ¶ 36[1] and ¶ 36[2].

Timmerman's request for public injunctive relief does not alter the analysis. *Id.* Postmates requests that Timmerman's claims be stayed pending arbitration. *Id.* at 11–12.

Postmates argues that Albert's claims for failure to reimburse and failure to pay minimum wage are deficient in that he does not identify any expenses that he specifically incurred and was not repaid for, or any particular facts indicating that he specifically was paid less than minimum wage. *Id.* at 13–18. Postmates contends that Albert cannot state a claim for willful misclassification because Labor Code section 226.8 does not create a private right of action, and that his current complaint fails to include sufficient factual allegations to support a plausible conclusion that Postmates willfully misclassified him. *Id.* at 18–20. Similarly, Postmates argues that Albert has not alleged that Postmates failed to pay Albert himself waiting time wages that he was owed, as would be necessary for both his fifth claim for unpaid wages and his sixth claim for breach of contract, nor do his allegations explain his theory of why such wages were due. *Id.* at 20–24. Postmates also argues that Albert cannot simultaneously rely on both the Labor Code and a contract theory to seek unpaid wages. *Id.* at 22–23. With respect to Albert's fourth claim, Postmates contends that Albert cannot prevail on a derivative claim under the UCL for the same reasons that each of his underlying claims are defective. *Id.* at 20.

Plaintiffs argue, as they did with respect to Lee's claims, that Postmates has not carried its burden to show that the arbitration provision was reasonably conspicuous and thus that Timmerman actually entered an agreement to arbitrate. Opp'n (dkt. 37) at 3–6. Plaintiffs also argue once again that Postmates couriers fall within the transportation worker exception to the FAA. *Id.* at 6–14. Plaintiffs contend that Albert's allegations are sufficient, and argue that section 226.8 supports a private right of action and that a claim for breach of contract can be asserted concurrently with a claim for unpaid wages based on the same conduct. *Id.* at 14–20. If the Court determines that Albert's allegations are insufficient, Plaintiffs request leave to amend. *See id.*

Postmates argues again in its reply that the Fleet Agreement and its arbitration provision were sufficiently conspicuous, submitting additional evidence including screenshots of the method by which the Fleet Agreement is presented to couriers. Reply (dkt. 39) at 2–5; Campbell Reply Decl. ¶¶ 2–7. Postmates contends that the transportation worker exception to the FAA does not

5

apply here because, as the Court previously held, Postmates couriers making local deliveries are not engaged in interstate commerce within the meaning of the statute. *Id.* at 5–10. Postmates also once again argues that Albert's allegations fail to state a claim on which relief can be granted. *Id.* at 10–15.

## III.  ANALYSIS OF MOTION TO COMPEL ARBITRATION

### A.  Legal Standard

Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because arbitration is a matter of contract, the question of arbitrability is, in principle, an issue for judicial determination. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). The court's role in addressing a question of arbitrability is "limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court finds that both of these requirements are met, the FAA requires it to enforce the provision in accordance with its terms. *Id.*

The FAA "was created to counter prevalent judicial refusal to enforce arbitration agreements . . . and has been interpreted to embody 'a liberal federal policy favoring arbitration.'" *Mortenson v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Thus, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25. Nonetheless, "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted). Consequently,

courts may apply the "presumption favoring arbitration . . . only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and best construed to encompass the dispute." *Id.* at 303. Even where such a presumption arises, the Court explained, arbitration should be ordered only if the presumption is not rebutted. *Id*. at 301. Where the presumption applies, courts "compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 746 (9th Cir. 2014) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citation omitted)).

The Supreme Court in *Granite Rock* explained that the presumption in favor of arbitration "is merely an acknowledgment of the FAA's commitment to 'overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" 561 U.S. at 299 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ*., 489 U.S. 468, 478 (1989)). The Supreme Court continued, "we have never held that this policy overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.' . . . Nor [has the Court] held that courts may use policy considerations as a substitute for party agreement." *Id*. (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

Where the parties "clearly and unmistakably" indicate their intent to do so, an agreement may delegate "threshold issues" of arbitrability, including the "enforceability, revocability or validity" of an arbitration clause, to the arbitrator rather than to a court. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (citations omitted).

As a general rule, courts apply state contract law in determining the validity and scope of an arbitration agreement. *Wolsey, Ltd. v. Foodmaker, Inc*., 144 F.3d 1205, 1210 (9th Cir. 1998). Thus, in determining whether there is a valid agreement to arbitrate, "courts must 'apply ordinary state-law principles that govern the formation of contracts.'" *Id*. (quoting *First Options*, 514 U.S. at 944). The parties do not dispute that California law governs the Fleet Agreement as applied to

7

Plaintiffs. *See, e.g.*, Mot. at 8; Opp'n at 13–14 & n.10.  The Court therefore looks to California law in addressing whether a valid agreement to arbitrate exists between Timmerman and Postmates and (assuming it does) whether Timmerman's claim falls within the scope of that agreement.

**B.  Sufficiency of Notice**

Plaintiffs dispute whether Timmerman had sufficiently conspicuous notice of the Fleet Agreement's arbitration provision to be bound by it.  Opp'n at 3–6.  Contrary to Postmates' arguments, *see* Reply at 2, this is an issue for the Court to decide.  Although parties may *by their express agreement* delegate threshold inquiries such as the scope and enforceability of an arbitration clause to an arbitrator, a defendant cannot bootstrap its way to arbitration based on an arbitration clause of which the plaintiff lacked sufficient notice for it to constitute an agreement at all.  A court may compel arbitration of an issue, including threshold issues, only after first determining for itself that the parties in fact agreed to do so.[5]  *See Granite Rock*, 561 U.S. at 299.  The case that Postmates cites for this argument does not address whether a plaintiff had sufficient notice of an arbitration clause.  *See* Reply at 2 (citing *Mohamed*, 848 at 1208–09).  To the contrary, that decision requires "[c]lear and unmistakable evidence of an agreement" by the parties to arbitrate threshold issues.  *Mohamed*, 848 F.3d at 1208.

According to Postmates' records, Timmerman agreed to the 2017 version of the Fleet Agreement on May 24, 2017, and agreed to the updated 2018 version of the Fleet Agreement on May 11, 2018.  Campbell Decl. ¶¶ 9–11 & Ex. A (spreadsheet indicating Timmerman's acceptance of the agreement), Ex. C (2017 Fleet Agreement), Ex. D (2018 Fleet Agreement). Postmates employs a "'click-through' process" in which prospective couriers "are presented with a link to the Fleet Agreement" during the process of signing up to make deliveries for Postmates, must click on the link to proceed, at which point the text of the Fleet Agreement is displayed, and

---

[5] Suppose, counterfactually, that Postmates had drafted its Fleet Agreement in secret and refused to allow its couriers to review it, instead requiring couriers to check a box indicating their assent to the Fleet Agreement without ever seeing it.  It would be absurd under such circumstances to allow any clause in the secret document, regardless of the scope of its language, to force a courier to arbitrate the question of whether she had agreed to such terms.

8

then must click either "Agree" or "Dismiss" before moving to the next step. Campbell Decl. ¶¶ 4–5; Campbell Reply Decl. ¶¶ 2–5.[6] Couriers who accept the agreement are emailed a copy of it and may also access it in the Postmates "Fleet App" after they sign up, and must follow the same process when Postmates updates its Fleet Agreement. Campbell Decl. ¶¶ 5–7; Campbell Reply Decl. ¶¶ 5–7.

As noted in this Court's previous order addressing the arbitrability of Lee's claims, courts applying California law have typically held that procedures like the one employed by Postmates here are sufficient to establish contract formation. *E.g.*, *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (collecting district court decisions). Plaintiffs rely on decisions finding insufficient notice in some cases where contracts were presented through ambiguous hyperlinked text that recipients might not have recognized as links to the text of the contract. *See, e.g.*, *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62–64 (1st Cir. 2018) (applying Massachusetts law); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 463–69 (S.D.N.Y. 2017) (applying New York law); Liss-Riordan Decl. Ex. D (*Talbot v. Lyft, Inc.*, No. CGC 18-566392 (Cal. Super. Ct., Cty. of S.F. Oct. 29, 2010)) at 5–8. Unlike in those cases, Timmerman was presented with the text of the Fleet Agreement before clicking "agree." Campbell Reply Decl. ¶ 4. Timmerman states in a declaration that the "arbitration provision is buried deep within the contract," Timmerman Decl. ¶ 4, but that statement neglects that both the 2017 and 2018 versions of the Fleet Agreement note on the first page the existence of the arbitration provision and encourage the reader to review that section carefully, *see* Campbell Decl. Exs. C, D. Plaintiffs cite no case holding that notice was not sufficiently conspicuous under similar circumstances, and the Court holds that Postmates has met its burden as to this issue.

Timmerman also did not effectively opt out of the arbitration provision. She did not affirmatively opt out of the 2017 Fleet Agreement's arbitration clause, which she could have done within thirty days of accepting the 2017 Fleet Agreement. Campbell Decl. ¶ 10 & Ex. C

---

[6] Once again, Postmates inexplicably waited to introduce relevant evidence until its reply. As in the previous dispute regarding arbitration of Lee's claims, however, there is again no real factual dispute regarding the method by which the Fleet Agreement was presented to couriers, and at the hearing Plaintiffs did not dispute the accuracy of Postmates' evidence, only its timeliness.

¶ 11B(ix). The Fleet Agreement does not provide a renewed opportunity to opt out when changes are made to the agreement unless such changes materially affect the arbitration clause, which Timmerman has not argued is the case here.[7] *Id.* Ex. C ¶ 11B(ix); *compare id.* Ex. C ¶ 11B (2017 Fleet Agreement) *with id.* Ex. D ¶ 11B (2018 Fleet Agreement, reflecting materially identical arbitration terms). Thus, although Timmerman attempted to opt out of the 2018 Fleet Agreement on June 1, 2018, she was not permitted to do so at that time. Liss-Riordan Decl. Ex. C; Campbell Decl. ¶ 12.

### C. Transportation Worker Exception

The statutory language of the FAA excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C § 1. The Supreme Court has interpreted this exception as governing "only contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). A court must "assess whether a Section 1 exemption applies before ordering arbitration"; the parties' agreement may not delegate that question to an arbitrator. *In re Van Dusen*, 654 F.3d 838, 846 (9th Cir. 2011); *see also Van Dusen v. Swift Transp. Co., Inc.*, 544 F. App'x 724 (9th Cir. 2013) (explaining that *In re Van Dusen* is precedential "law of the circuit" even though that opinion denied a petition for mandamus to reverse the district court's error).[8]

The Court previously held that Postmates couriers do not fall within the transportation worker exception because Lee failed to show that couriers are sufficiently "engaged in . . . interstate commerce." *See* 9 U.S.C § 1, Order re Lee at 10–14. Plaintiffs renew their argument

---

[7] Plaintiffs have not challenged whether such a framework, preventing a worker from opting out of arbitration even when other aspects of the contract change, is permissible under California law and the FAA. Plaintiffs argue in a footnote that Timmerman should be permitted to opt out because her belated attempt to do so in 2018 indicates that she did not agree to the arbitration provision in 2017, but cite no authority for that argument.

[8] There is some disagreement among the courts of appeals on this issue. *See Oliveira v. New Prime, Inc.*, 857 F.3d 7, 12–15 (1st Cir. 2017) (following the Ninth Circuit's approach, but noting that the Eighth Circuit reached the opposite conclusion in *Green v. Supershuttle Int'l, Inc.*, 653 F.3d 766 (8th Cir. 2011)), *cert. granted*, 138 S. Ct. 1164 (2018). Postmates therefore argues that "*Van Dusen* is not sound precedent" and was "wrongly decided." Reply re Arbitration at 9–10. Regardless of its merit, *Van Dusen* is binding on this Court—and the Court also agrees with its reasoning. While the Supreme Court will likely decide the matter conclusively in its review of the First Circuit's *Oliveira* decision, this Court will not wait for that opinion to proceed with this case.

10

that the exception applies, citing Timmerman's declaration that she delivered packaged goods presumably produced out of state. *See* Timmerman Decl. ¶¶ 7–11. The fact remains that there is no evidence of Timmerman actually engaging in interstate commerce—Plaintiffs do not dispute that all of Timmerman's deliveries were from local merchants within California, and do not cite any case holding that making only local deliveries, for a company that does not hold itself out as transporting goods between states, constitutes engaging in interstate commerce within the meaning of the statute. Plaintiffs rely on an unpublished Ninth Circuit decision from 2006 concerning truck drivers who delivered soda, *see* Opp'n at 8–10 (citing three times *Seven-Up/RC Bottling Co. of S. Cal. v. Amalgamated Indus. Workers Union, Local 61*, 183 F. App'x 643 (9th Cir. 2006)), but that two-paragraph non-precedential memorandum disposition does not address whether the drivers crossed state lines.

Plaintiffs also address the eight-factor test set forth by the Eighth Circuit in *Lenz v. Yellow Transportation, Inc.*, 431 F.3d 348 (8th Cir. 2005). Opp'n at 9–13. Most of those factors address whether a worker is a "transportation" worker, which is not meaningfully in dispute here. *See, e.g.*, *Lenz*, 431 F.3d at 352 (identifying as one relevant factor "the nexus that exists between the employee's job duties and the vehicle the employee uses"). The only factors addressing interstate commerce are: "second, whether the employee is directly responsible for transporting the goods in interstate commerce; third, whether the employee handles goods that travel interstate; . . . [and] seventh, whether a strike by the employee would disrupt interstate commerce." *Id.* Couriers who make *local* deliveries are not "directly responsible for transporting goods in *interstate* commerce." *Id.* (emphasis added). Whether a courier "handles goods that travel interstate," *id.*, could perhaps be considered satisfied by goods that at some point originated out of state, but a better reading looks to whether the courier handles goods as part of an interstate shipment. *See Magana v. DoorDash, Inc.*, __ F. Supp. 3d __, No. 18-cv-03395-PJH, 2018 WL 5291988, at * 6 (N.D. Cal. Oct. 22, 2018) ("Although this would almost certainly be enough under the United States Constitution's Commerce Clause, the FAA is more narrow."). Items purchased by local customers from local merchants are not "goods that travel interstate" within the meaning of the test, *see Lenz*, 431 F.3d at 352, and even if they were, this factor alone would not carry the court's

11

conclusion on the issue of interstate commerce. Finally, while Plaintiffs argue that "a strike by all Postmates couriers around the country could very well disrupt interstate commerce" because Postmates hires couriers throughout the country, Opp'n at 13, the Court understands that factor as looking to whether a strike would disrupt interstate transportation of goods—for example, by crippling trucking or shipping lines, air carriers, railroads, seaports, and the like. A strike by local couriers would presumably have no more effect on interstate commerce than a national strike of, say, cashiers, shelf-stockers, or any number of other classes of employees who are not interstate transportation workers.

The Court stands by its previous decision that Postmates couriers do not fall within the transportation worker exception to the FAA because they do not engage in interstate commerce. Postmates' motion to compel arbitration of Timmerman's claims is GRANTED.

### D. Public Injunctive Relief and *McGill*

Among the statutory remedies provided by the UCL is "public injunctive relief, i.e., injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017). In *McGill*, the California Supreme Court considered an arbitration clause that the parties agreed "purport[ed] to preclude [the plaintiff] from seeking public injunctive relief in arbitration, in court, or *in any forum*," and held that the clause was "invalid and unenforceable under state law insofar as it purports to waive [the plaintiff's] statutory right to seek such relief." *Id.* at 961. The court noted that a request for public injunctive relief does not require a claim to be brought as a class or representative action, but is instead a remedy available to an individual private plaintiff, so long as that plaintiff has suffered injury sufficient for standing to bring a private action under the UCL. *Id.* at 959. This Court previously held that an arbitrator must decide in the first instance whether the relief that Plaintiffs seek is in fact public injunctive relief, and whether the Fleet Agreement purports to prohibit an arbitrator from awarding public injunctive relief. Order re Lee at 14–17.

Postmates asks the Court to "'throw out the rule of *McGill* as it applies this,'" suggesting that a rule permitting arbitration of a claim for public injunctive relief would violate the FAA.

Mot. at 11 (quoting Oct. 12, 2018 Tr. (dkt. 34) at 21:17–18).[9] Postmates also again asks the Court to hold, in the context of Postmates' motion to compel arbitration of Timmerman's claims, that the relief Plaintiffs seek is not actually "public injunctive relief." *Id.* at 10–11. Plaintiffs do not address the issue of public injunctive relief in their opposition, and Postmates does not return to it in its reply.

Whether Timmerman in fact states a claim for public injunctive relief, and whether the Fleet Agreement and the FAA permit an arbitrator to award such relief, are—as stated in the Court's previous order with respect to Lee's complaint—issues for the arbitrator to decide in the first instance. *See* Order re Lee at 17 ("Reading the Fleet Agreement here in conjunction with *McGill* and *Ferguson* [*v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013)], Lee likely can and must arbitrate her claim for public injunctive relief, but at the very least must submit to the arbitrator the question of whether a claim for such relief falls within the arbitrator's authority."). The Court declines Postmates' invitation to hold that such relief is unavailable.

### E. Dismissal of Lee and Timmerman's Claims

The Court previously granted Postmates' motion to stay Lee's claims pending arbitration. Plaintiffs now ask that if the Court compels arbitration of Timmerman's claims, the Court should dismiss Lee and Timmerman's claims to allow them to appeal. The FAA states that if a motion to compel arbitration is granted, the Court "shall on application of one of the parties stay the trial of

---

[9] Leading into this argument, Postmates' motion misrepresents case law addressing class arbitration and the FAA, by selectively quoting a decision from the Supreme Court to suggest that the Court has barred such proceedings entirely. In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the Court emphasized that the "overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements *according to their terms* so as to facilitate streamlined proceedings," and went on to hold that "*[r]equiring* the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." 563 U.S. at 344 (emphasis added). The Court therefore enforced an agreement that by its terms required individual, non-class arbitration, and while it expressed skepticism regarding class arbitration, it did not hold that the FAA prohibits it. To the contrary, the Supreme Court has separately held that an "arbitrator may employ class procedures . . . if the parties have authorized them." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 565 (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)). By trimming the quotation to only "'[C]lass arbitration . . . is inconsistent with the FAA,'" Mot. at 10 (quoting *Concepcion*; alterations in original), Postmates misleadingly suggests that *Concepcion* stands for a rule that class arbitration is never permitted, rather than its actual holding that an arbitration agreement should be enforced pursuant to its particular terms.

13

the action." 9 U.S.C. § 3. The Ninth Circuit has held, however, "that, notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014). The Court in its discretion DISMISSES Lee and Timmerman's claims without prejudice.

## IV. ANALYSIS OF MOTION TO DISMISS

### A. Legal Standard for Motions to Dismiss Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

14

(alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. Labor Code Section 226.8 Does Not Provide a Private Right of Action

Albert asserts his second claim, for "willful misclassification," under section 226.8 of the California Labor Code. FAC ¶ 35. That statute provides that it is unlawful for an employer to willfully misclassify any person as an independent contractor, and authorized the Labor Commissioner to enforce that prohibition. Cal. Lab. Code § 226.8(a)(1), (h).

Several district court decisions have held that section 226.8 does not create a private right of action. *See Romano v. SCI Direct, Inc.*, No. 2:17-cv-03537-ODW (JEM), 2017 WL 8292778, at *8 (C.D. Cal. Nov. 27, 2017); *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137 JCS, 2014 WL 1338297, at *19 (N.D. Cal. Mar. 28, 2014); *Rosset v. Hunter Eng'g Co.*, No. C 14-01701 LB, 2014 WL 3569332, at *8 (N.D. Cal. July 17, 2014). Albert relies on a short order by Judge Chhabria dismissing one plaintiff's section 226.8 claim against Deliv, Inc. with prejudice based on the timing of that plaintiff's employment, but dismissing the claim of another plaintiff—incidentally, Albert himself—with leave to amend because it was unclear when Albert worked for Deliv. Opp'n at 17; Liss-Riordan Decl. Ex. E (*Lawson v. Deliv*, No. 18-cv-03632-VC (N.D. Cal. Sept. 7, 2018) (slip op.)). Judge Chhabria's order in Lawson does not consider whether section 226.8 provides a private right of action.

More significant than the district court decisions on the subject, a California appellate court has held in a carefully reasoned opinion that the statute does not create a private right of action. *Noe v. Superior Court*, 237 Cal. App. 4th 316, 334–41 (2015). "'In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently.'" *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) (quoting *Andrade v. City of Phoenix*, 692 F.2d 557, 559 (9th Cir. 1982) (per curiam)). Despite Postmates citing *Noe* in its motion, Plaintiffs do not address it in their

opposition brief, much less present the sort of "convincing evidence" that would be necessary for this Court to depart from its holding. Albert's claim under section 226.8 is therefore DISMISED WITH PREJUDICE. This dismissal is without prejudice, however, to Albert predicating a UCL claim on conduct made unlawful by section 226.8. *See Noe*, 237 Cal. App. 4th at 326 (noting that "the UCL . . . might provide plaintiffs some form of remedy for a violation of section 226.8").

### C. Albert Does Not Allege Any Harm from Postmates' Policies

Albert asserts as his remaining claims failure to reimburse business expenses, FAC ¶ 34, failure to pay minimum wage under Labor Code sections 1197 and 1194, *id.* ¶ 36[1], unlawful business practices in violation of the UCL, *id.* ¶ 36[2], failure to pay wages under Labor Code section 204, *id.* ¶ 37, and breach of contract with respect to payment owed for waiting time, *id.* ¶ 38. Those claims are premised, respectively, on failure to reimburse expenses that a plaintiff actually incurred, failure to pay minimum wage for time that a plaintiff actually worked and for which the plaintiff was not sufficiently compensated, harm that a plaintiff actually suffered as a result of unlawful practices, failure to pay wages for time (here, waiting time) that a plaintiff actually worked for which the plaintiff was not compensated, and failure to perform a contractual duty (here, payment for waiting time) owed to a plaintiff.

This case must be viable as an individual action before it can be certified as a class action, and general allegations regarding "couriers" do not substitute for allegations pertaining to Albert specifically. The only factual allegations of the first amended complaint pertaining to Albert, as opposed to allegations about Postmates' typical conduct with respect to couriers in general, are as follows: (1) "Albert is an adult resident of Los Angeles, California, where he has worked as a courier for Postmates," *id.* ¶ 5; (2) Albert has "driven for Postmates at various times, including over the last year, and continue[s] to drive for Postmates," *id.* ¶ 14; (3) Postmates classifies Albert and other couriers as independent contractors, *id.* ¶ 15; (4) "Plaintiffs and other class members have uniformly been deprived reimbursement of their necessary business expenses," *id.* ¶ 26; and (5) "Named Plaintiffs [including] Albert are class members who suffered damages as a result of [Postmates'] conduct and actions alleged herein," *id.* ¶ 29. Other than the last two sentences— which are the sort of broad, conclusory assertions held insufficient under *Iqbal* and *Twombly*—

16

1 there is no allegation that Albert himself incurred any expenses for which he was not reimbursed, that Albert himself performed any work (including waiting time) for which he was not sufficiently paid (whether based on statutory or contractual obligations), or that Albert himself was otherwise harmed by any unlawful business practice. This deficiency applies to all of his remaining claims and warrants dismissal with leave to amend. Postmates' motion is GRANTED to that extent.

The Court does not reach Postmates' remaining arguments, except to note that Albert is free to pursue potentially conflicting theories of recovery. *See* Fed. R. Civ. P. 8(d)(3). The Court further notes that, in drafting his amended complaint, Albert should consider Postmates' arguments regarding other purported deficiencies in his current allegations.

## V. CONCLUSION

For the reasons discussed above, Postmates' motion to compel arbitration of Timmerman's claims is GRANTED, and Timmerman and Lee's claims are DISMISSED at Plaintiffs' request. Postmates' motion to dismiss Albert's claims for failure to state a claim is also GRANTED. Albert's claims are DISMISSED with leave to amend, except for his claim under Labor Code section 26.8, which is DISMISSED with prejudice. Albert may file an amended complaint no later than January 7, 2019.

At the hearing, Albert's counsel stated that Albert would pursue his claim as an individual action rather than seek class certification. This case was removed under the Class Action Fairness Act ("CAFA"), no other basis for federal jurisdiction is apparent, and the parties should be prepared to address whether Albert's no-longer-class claims remain within this Court's subject matter jurisdiction. While the Ninth Circuit has held that federal courts retain CAFA jurisdiction after the *denial* of a class certification motion, the "primary concern in that case was thwarting 'jurisdictional ping-pong game[s]'" in which parties lob a case back and forth between federal and state courts as post-filing developments occur." *Polo v. Innovations Int'l, LLC*, 833 F.3d 1193, 1197 (9th Cir. 2016) (quoting *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010)); *see also Visendi v. Bank of Am., N.A.*, 733 F.3d 863 (9th Cir. 2013) (reaching the same conclusion after a district court determined that a mass action removed under CAFA contained improperly joined

claims); *Lopez v. Wendy's Int'l, Inc.*, 518 F. App'x 580 (9th Cir. 2013) (reaching the same conclusion after the district court granted the defendant's motion to dismiss class claims). The Seventh Circuit opinion from which the doctrine in this Circuit arose noted that remanding after denial of class certification would undermine the purpose of CAFA by potentially allowing plaintiffs to then seek certification under more lenient standards in state court. *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806–07 (7th Cir. 2010). It is not obvious that those considerations weigh in favor of the same outcome where, after removal, a plaintiff voluntarily chooses to proceed as an individual rather than seek to represent a class. The Court also notes that Albert was not a party to this case when it was removed. Perhaps the closest case from the Ninth Circuit, *Ellison v. Autozone Inc.*, 486 F. App'x 674 (9th Cir. 2012), is neither perfectly analogous nor precedential. Unless the parties are aware of binding authority addressing the particular posture of this case, they may wish to consider whether voluntarily dismissing without prejudice here and proceeding with Albert's individual claims in state court would provide greater certainty in the finality of any judgment ultimately entered.

**IT IS SO ORDERED.**

Dated: December 17, 2018

JOSEPH C. SPERO
Chief Magistrate Judge